1 | HESS, BOWER, ADAMS-HESS, PC
Randy M. Hess (SBN 88635)
2 | Nicole S. Adams-Hess (SBN 286632)
2105 South Bascom Avenue, Suite 200
3 | Campbell, California 95008
Telephone: (408) 341-0234
4 | Facsimile: (408) 341-0250
rhess@hbalawgroup.com
5 | nadamshess@hbalawgroup.com

6 | Attorneys for Plaintiff
MILLS POTOCZAK AND CO.

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

11 | MILLS POTOCZAK AND CO. a
corporation,
12
                    Plaintiff,
13
            v.
14
NAUTILUS INSURANCE COMPANY,
15 | business entity form unknown, LANDMARK
AMERICAN INSURANCE COMPANY, an
16 | Oklahoma Stock Company;
WESTCHESTER SURPLUS LINES
17 | INSURANCE COMPANY, a stock
company; KONSTANTIN SHECHTER,
18 | individually and as co-Trustee of the
Schechter Family Trust dated May 22,
19 | 2009; SVETLANA AVERBUKH, an
individual on behalf of themselves and all
20 | others similarly situated; ARNOLD
APPLEBAUM, an individual on behalf of
21 | himself and all other similarly situated;
Thomas Hebrank, in his capacity as Court-
22 | appointed permanent receiver and
successor trustee for the PWCG Trust; and
23 | DOES 1 through 100, inclusive,

24 |                 Defendants.

25

26

27

28

| Case No. |

**COMPLAINT FOR:**
1. **BREACH OF CONTRACT;**
2. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**
3. **DECLARATORY RELIEF**

[This case is not a limited civil case and the demand does exceed $25,000.]

**JURY TRIAL REQUESTED**
(Fed. R. Civ. P. 38(b))

Plaintiff Mills Potoczak and Company ("MPC" or "Plaintiff") alleges:

## I. JURISDICTION

1.      Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as the action is between citizens of different states, and the amount in controversy exceeds the sum of

1 $75,000, exclusive of interest and costs.

2     2.     The Court also has jurisdiction over this matter under 28 U.S.C. § 1367(a)
3 under the doctrine of supplemental jurisdiction, in that this action arises from a common
4 nucleus of operative facts as, and is substantially related to the claims brough in the action
5 currently before this Court, titled *Thomas Hebrank v. Mills, Potoczak & Company, PC*, Case
6 Number 2:20-cv-8097.

7     3.     Venue in the Central District of California is proper under 28 U.S.C. §
8 1391(b)(2) because a substantial part of events or omissions giving rise to the claim at issue
9 occurred in the Central District of California, as the insurance coverage action concerns
10 underlying litigation taking place in this district, with underlying wrongful acts also alleged to
11 have taken place in this judicial district.

12                 **II. PARTIES**

13     4.     At all times mentioned herein Plaintiff is and was a corporation duly authorized
14 and created pursuant to the laws of the Ohio.

15     5.     Upon information and belief, at all times herein mentioned, defendant
16 NAUTILUS INSURANCE COMPANY ("Nautilus") is a citizen of Arizona, and is and was an
17 insurance company qualified to do business, and doing business, in the State of California,
18 within the Central District of California, at all relevant to this dispute.

19     6.     Upon information and belief, at all times herein mentioned, Defendant
20 LANDMARK AMERICAN INSURANCE COMPANY ("Landmark") is a citizen of Oklahoma,
21 and is and was an insurance company qualified to do business in the State of California, and
22 doing business, in the State of California, within the Central District of California, at all
23 relevant to this dispute.

24     7.     Upon information and belief, at all times herein mentioned, defendant
25 WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("Westchester") is a citizen of
26 Georgia, and is and was an insurance company qualified to do business in the State of
27 California, and doing business, in the State of California, within the Central District of
28 California, at all relevant to this dispute.

8.  Upon information and belief, at all times herein mentioned, defendant KONSTANTIN SHECHTER, is an individual and co-Trustee of the Schechter Family Trust dated May 22, 2009, and is a California resident and resides in this judicial district.

9.  Upon information and belief, at all times herein mentioned, defendant SVETLANA AVERBUKH, is a California resident and resides in this judicial district.

10.  Upon information and belief, at all times herein mentioned, defendant ARNOLD APPLEBAUM is a California resident and resides in this judicial district.

11.  Upon information and belief, at all times herein mentioned, defendant Thomas Hebrank, in his capacity as Court-appointed permanent receiver and successor trustee for the PWCG Trust, is a court-appointed permanent receiver and California resident.

12.  Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when they are ascertained.  Plaintiff is informed and believes, and thereon alleges, that each of the said fictitiously-named defendants is responsible and liable in some manner for the occurrences herein alleged, or upon the policies of insurance hereinafter alleged, and that plaintiff's damages as herein alleged were proximately caused by defendants' conduct and/or any of them, and/or each of them.

13.  Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, defendants, and each of them, were acting as the agents, servants, successors, predecessors, principals, joint venturers, and employees of each other, and were acting within the full course and scope of said relationships, and with the full knowledge, consent and ratification, either expressed or implied, of each of the other said named defendants.

## III.  GENERAL ALLEGATIONS

14.  MPC is and was a public accounting firm that provides escrow, trustee and related services in the life settlements market. Life settlements are investments where interests in life insurance policies are sold to third parties. There are currently three lawsuits proceeding against MPC alleging claims of professional negligence in connection with its escrow and trustee services for a particular life settlement trust, the Pacific West Capital Group ("PWCG") Trust. These lawsuits are:

1. *Thomas C. Hebrank, in his capacity as Court-appointed permanent received and successor trustee for PWCG Trust v. Mills, Potoczak & Company, P.C.,* United States District Court, Central District of California, Case No. 2:20-cv-8097 ("Receiver").

2. *Konstantin Shechter, et al., v. Pacific West Capital Group, Inc., et. al.,* Los Angeles Case No. BC621512 ("Shechter")

3. *Arnold N. Applebaum, et al., v. Pacific West Capital Group, Inc., et al.,* Case No. BC652409) ("Applebaum") The receivership stayed the California Superior Court cases. Applebaum and Shechter have been deemed to be related by the LA Superior Court. Shechter is the lead case, and Applebaum has been stayed pending the outcome of Shechter.

There are also two additional lawsuits that have been dismissed that were brought by other investors in the PWCG Trust:

1. *William Names v. Pacific West Capital Group, Inc., et al.,* Case No. BC658582. ("Names").

2. *Rhyme v. Pacific West Capital Group, Inc., et al.,* Cal. Super. Ct., Los Angeles County Case No. BC606213 ("Rhyme").

15.  This action concerns insurance coverage issues relating to these actions. MPC received notice of the Rhyme action during the Landmark policy period and complied with all policy provisions in requesting a defense and coverage from Landmark. Landmark agreed to provide a defense to the Rhyme action under its professional liability policy issued to MPC subject to a reservation of rights, on or around February 25, 2016. The Rhyme action was dismissed before MPC exhausted the deductible in the Landmark policy.

16.  Subsequently, the Names, Shechter, Applebaum and Receiver actions were filed. MPC timely tendered these lawsuits to Nautilus. MPC also provided notice of these lawsuits to Landmark.

17.  Landmark denied coverage the Names, Shechter, Applebaum and Receiver actions, asserting that these actions were not filed and reported during its policy year, and that they did not relate back to the Rhyme action. Nautilus agreed to provide a defense to MPC to the Receiver, Shechter, and Applebaum actions under a reservation of rights.

18.  However, despite agreeing to provide a defense, Nautilus contends that it does not owe MPC a defense because it asserts that the Receiver, Shechter, and Applebaum actions relate back to the Rhyme action, and refuses to pay sufficient indemnity amounts to settle the cases. Nautilus asserts that Landmark would be the proper insurer to provide a defense and coverage to the currently pending actions because it asserts that these lawsuits relate back to the Rhyme action, which Landmark defended. Landmark contends that the cases are not related to Rhyme and it has no obligation to defend or indemnify MPC for the Receiver, Shechter or Applebaum actions. MPC has been placed in an impossible position where plaintiffs in the underlying actions are seeking tens of millions of dollars in damages from it, and its insurers are refusing to fully defend and settle these actions.

19.  MPC brings this action to obtain the coverage to which it is entitled, and to seek recompense for the significant legal fees and costs it has had to incur and pay in order to obtain benefits owed under the policy.

## IV.  FIRST CAUSE OF ACTION

### (Breach of Contract against Nautilus)

20.  Plaintiff alleges and incorporates by reference each and every preceding paragraph in support of this claim for relief.

21.  Plaintiff and Nautilus entered into a contract of insurance for the purpose of providing a policy of professional liability insurance to Plaintiff that specifically provided insurance coverage for claims of professional negligence in "escrow, policy certification, premium payment, life tracking, death claims and trust services performed in connection with

1  life settlements." (Exhibit A, p. 1.) Defendant, by its duly authorized agents, for valuable

2  consideration, executed, delivered and issued policy number MPL 1468418-P1 to Plaintiff

3  with $5,000,000 in limits of liability. The Policy was in effect from January 21, 2016 to January

4  21, 2017, and provided coverage for allegations of professional negligence – a true and

5  correct copy is attached hereto as Exhibit A and incorporated herein by reference ("Nautilus

6  Policy"). By the terms of the Nautilus Policy, Nautilus agreed to provide Plaintiff with liability

7  insurance, including a duty to defend, as well as other coverages. The Nautilus Policy by its

8  terms was effective at all times herein relevant, and was maintained in full force and in effect

9  at all times herein relevant.

10      22.     By the terms of the Nautilus Policy, Nautilus agreed to provide coverage for:

**A.      Professional Liability Insurance Coverage**

The Company agrees to pay on behalf of the Insured all sums in excess of the Deductible, up to the Limit of Liability, that the Insured shall become legally obligated to pay as Damages and Claim Expenses arising from a Claim that is both first made against the Insured and reported in writing to the Company in accordance with Section V.A. of this Policy, for any actual or alleged Wrongful Act, provided that:

1.      no Insured gave notice to a Prior Insurer of such Claim or a Related Claim; and

2.      no Insured gave notice to a Prior Insurer of any such Wrongful Act or Related Wrongful Act; and

3.      prior to the date an Insured first becomes an Insured under this Policy, or became an Insured under the first policy issued to the Named Insured by the Company (or its subsidiary or affiliated insurers), and such insurance coverage has been continuously maintained with the Company (or its subsidiary or affiliated insurers) until the effective date of this Policy, whichever is earlier, no Insured had a basis to believe that any Wrongful Act, or Related Wrongful Act, might reasonably be expected to be the basis of a Claim; and

4.      such Wrongful Act happened on or after the Retroactive Date and before the end of the Policy Period.

23.     The Nautilus Policy defines "related claim" to mean: "all Claims arising out of a

single **Wrongful Act**[1], or arising out of **Related Wrongful Acts** in the performance of **Professional Services**." "**Related Wrongful Acts** means all **Wrongful Acts** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision."

24.     Nautilus asserts that the Receiver, Shechter and Applebaum actions all relate back to the Rhyme action and are excluded from coverage on that basis. The policy excludes coverage for claims made prior to the inception of its policy period. The Nautilus Policy also has a specific claim exclusion for any claim "based on, arising from, or in any way involving" the Rhyme action. Despite this, Nautilus has agreed to provide a defense to MPC, and as a defending insurer, Nautilus must provide a full and complete defense, and has an obligation to settle, without taking coverage issues into consideration.

25.     Nautilus agreed under the terms of the Nautilus Policy to pay those sums that its insured became legally obligated to pay as damages for claims of professional negligence. Nautilus agreed to act in good faith and deal fairly with MPC when it entered into the Nautilus Policy.

26.     The allegations alleged in the Receiver, Shechter, and Applebaum actions, showed a potential for coverage under the Nautilus Policy, requiring that Nautilus provide an immediate and complete defense to all claims. While Nautilus has agreed to provide a defense, it has refused to settle this case.

27.     Plaintiff, at all times herein mentioned, performed all of the terms and conditions that were required to be performed under the Nautilus Policy, including attending a coverage mediation with Nautilus in November 2021. All premiums for the Nautilus Policy have been paid. Plaintiff intended and expected thereby to be assured of peace of mind and financial and economic security in the event of claims made and tendered under the Nautilus Policy.

28.     Nautilus breached the Nautilus Policy by refusing to settle the Receiver, Shechter, and Applebaum actions when there was an opportunity to do so, despite purportedly providing a defense, and the agreements and obligations contained in the

---

[1] Bolded terms refer to defined terms in the policies.

Nautilus Policy.

29.     Nautilus further breached the Nautilus Policy as follows:

a.     Failing and refusing to make a reasonable, prompt and adequate investigation of Plaintiff's claim for benefits or the allegations being alleged in the Receiver, Shechter and Applebaum actions.

b.     Failing and refusing to timely provide Plaintiff with attorneys, and/or to provide timely, adequate and complete payment for Plaintiff's attorneys, expenses and costs incurred in the Receiver, Shechter and Applebaum actions.

c.     Resolving ambiguities in the Nautilus Policy to Nautilus' benefit;

d.     By the above and other conduct, violating the California Insurance Code and the Regulations of the California Department of Insurance;

e.     Handling the claim of Plaintiff in an unfair manner;

f.     Misrepresenting to Plaintiff pertinent facts and insurance policy provisions relating to coverages at issue.

g.     Failing and refusing to acknowledge and act reasonably promptly upon communications from Plaintiff with respect to the Receiver, Shechter and Applebaum actions arising under the Nautilus Policy;

h.     Failing and refusing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the Nautilus Policy, including incredible delays in payment of defense fees and costs;

j.     Failing and refusing to settle the case when there was an opportunity to do so and/or provide indemnity coverage when that coverage was required; and

k.     Requiring Plaintiff to retain and pay for coverage counsel and to file an action to obtain benefits under the Nautilus Policy.

30.     As a proximate result of Nautilus' refusals as herein alleged, and breaches of the Policy, Plaintiff was compelled to engage and pay defense counsel as well as suffer a loss of reputation and good will as a result of the actions filed against it.  As a further and proximate result of said breaches, Plaintiff was deprived of Defendant's resources to fully

1  defend against the allegations alleged in the Action.

2      31.    As a further direct and proximate result of the conduct of Defendant in refusing
3  to pay benefits due to Plaintiff and its conduct as set forth herein, Plaintiff has been damaged
4  thereby, including benefits withheld, attorneys' fees and costs incurred in defense of the
5  underlying actions, and attorneys' fees and costs incurred to obtain the benefits to which
6  Plaintiff was and is entitled under the Nautilus Policy, and other economic losses, and has
7  been damaged in other amounts not fully ascertained, but within the unlimited jurisdiction of
8  the Court.

9      WHEREFORE, Plaintiff prays judgment against Nautilus as hereinafter set forth.

10                    **V.    SECOND CAUSE OF ACTION**

11        **(Breach of the Implied Covenant of Good Faith and Fair Dealing**

12                          **Against Nautilus)**

13      32.    Plaintiff alleges and incorporates by reference each and every preceding
14  paragraph in support of this claim for relief.

15      33.    At all times herein relevant, when Nautilus entered into the Nautilus Policy and
16  accepted premiums, it agreed, and was legally bound to, act in good faith and deal fairly with
17  Plaintiff and thereby assumed obligations of good faith and fair dealing toward Plaintiff and
18  was legally bound to abide by such obligations.  Nevertheless, as set forth more particularly
19  herein, Nautilus failed and refused to act in good faith and deal fairly with Plaintiff, and
20  otherwise breached the implied covenant of good faith and fair dealing.

21      34.    Without any reasonable basis for doing so, and with full knowledge and/or
22  reckless disregard of the consequences thereof, Nautilus engaged in the following
23  unreasonable conduct in violation of the duty of good faith and fair dealing:

24          a.    Failing and refusing to make a reasonable, prompt and adequate
25  investigation of Plaintiff's claim for benefits or the allegations being alleged in the Receiver,
26  Shechter and Applebaum actions.

27

28

b.     Failing and refusing to provide Plaintiff with attorneys, and/or to provide adequate and timely payment for Plaintiff's attorneys, expenses and costs incurred in the Receiver, Shechter and Applebaum actions.

c.     Resolving ambiguities in the Nautilus Policy to Nautilus' benefit;

d.     By the above and other conduct, violating the California Insurance Code and the Regulations of the California Department of Insurance;

e.     Handling the claim of Plaintiff in an unfair manner;

f.     Misrepresenting to Plaintiff pertinent facts and insurance policy provisions relating to coverages at issue.

g.     Failing and refusing to acknowledge and act reasonably promptly upon communications from Plaintiff with respect to the Receiver, Shechter and Applebaum actions arising under the Nautilus Policy;

h.     Failing and refusing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the Nautilus Policy, including incredible delays in payment of defense fees and costs;

j.     Failing and refusing to settle the case when there was an opportunity to do so and/or provide indemnity coverage when that coverage was required. On or around February 19, 2021, counsel for claimants in the Receiver, Shechter and Applebaum actions sent a letter agreeing to settle all three actions for payment of the remaining policy limits. This letter was immediately forwarded to Nautilus' counsel. Despite having an awareness of the exposure in this action, Nautilus did not agree to pay its policy limits to contribute to the policy limits demand; and

k.     Requiring Plaintiff to retain and pay for coverage counsel and to file an action to obtain benefits under the Nautilus Policy.

35.     As a proximate result of Nautilus' bad faith conduct, Plaintiff was compelled to engage counsel and to incur attorneys' fees, costs and expenses in the defense of the Action, some, but not all of which was reimbursed by Nautilus, and Plaintiff suffered further exposure for interest and costs, as well as a loss of reputation and good will as a result of the action

1   filed against it, and it has sustained other economic losses and/or damages, all in amounts
2   not yet fully ascertained but within the unlimited jurisdiction of the Court.

3       36.     As a further proximate result of the bad faith conduct of Defendant, Plaintiff has
4   incurred and will continue to incur attorneys' fees and costs to obtain the coverage and
5   benefits owed by Nautilus to Plaintiff, and has been and will be otherwise damaged thereby in
6   an amount not yet fully ascertained, but according to proof at trial.

7       WHEREFORE, Plaintiff prays for judgment against Nautilus as hereinafter set forth.

8       **VI.     THIRD CAUSE OF ACTION**
9       **(Breach of Contract against Landmark)**

10      37.     Plaintiff alleges and incorporates by reference paragraphs 1-19 as if fully set
11  forth herein in support of this claim for relief.

12      38.     Plaintiff and Landmark entered into a contract of insurance for the purpose of
13  providing a policy of professional liability insurance to Plaintiff. Landmark, by its duly
14  authorized agents, for valuable consideration, executed, delivered and issued policy number
15  LHR749196 to Plaintiff with $5,000,000 in limits of liability. The Policy was in effect from
16  January 21, 2015 to January 21, 2016, and specifically provided insurance coverage for
17  claims of professional negligence in "escrow, policy certification, premium payment, life
18  tracking, death claims and trust services performed in connection with life settlements."
19  (Exhibit B, p. 1.). A true and correct copy is attached hereto as Exhibit B and incorporated
20  herein by reference ("Landmark Policy"). By the terms of the Landmark Policy, Landmark
21  agreed to provide Plaintiff with liability insurance, including a duty to defend, as well as other
22  coverages. The Landmark Policy by its terms was effective at all times herein relevant, and
23  was maintained in full force and in effect at all times herein relevant.

24      39.     By the terms of the Landmark Policy, Landmark agreed to provide coverage for:

25
26
27
28

**Part I.  Insuring Agreement**

**A.  Covered Services**

The Company will pay on behalf of the Insured, as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as Damages and associated Claim Expenses arising out of a negligent act, error or omission, **Advertising Liability or Personal Injury**, even if the **Claim** asserted is groundless, false or fraudulent, in the rendering of or failure to render professional services as described in the Declarations, provided that the:

1.  Claim is first made against the Insured during the **Policy Period**, and reported to the Company no later than thirty (30) days after the end of the **Policy Period**;

2.  Negligent act, error or omission, **Advertising Liability or Personal Injury** took place in a covered territory;

3.  Negligent act, error or omission, **Advertising Liability or Personal Injury** took place after the **Retroactive Date** as shown in the Declarations.

40.    The Landmark Policy also included a duty to defend potentially covered claims.

41.    The Landmark Policy provides coverage for claims first made and reported during its policy period, and also provides a defense and coverage for claims made after the policy period expires so long as the claim relates back to an earlier claim made during the policy period. The Landmark Policy provides that the subsequent claims will "be deemed as first made at the time the incident, occurrence or offense giving rise to such **Claim** was first provided." (Ex. B. p. 9.) "Additionally, **Claims** that arise from an incident, occurrence or offense first reported by the Insured during the **Policy Period** and accepted by the Company in accordance with **Part IV. A** Notice of Claim will be considered a **Claim** first made during the **Policy Period**." (Ex. B, p. 8.)

42.    Landmark takes the opposite position as Nautilus and asserts that the Receiver, Shechter and Applebaum actions do not relate back to the Rhyme action and are excluded from coverage on that basis. Landmark asserts that the current litigation does not relate back to the Rhyme claim and is not deemed to have been made during the Landmark policy period.

43.    Landmark agreed under the terms of the Landmark Policy to pay those sums that the insureds became legally obligated to pay as damages for claims of professional negligence. Landmark agreed to act in good faith and deal fairly with MPC when it entered into the Landmark Policy.

44.    If the allegations alleged in the Receiver, Shechter, and Applebaum actions,

showed a potential for coverage under the Landmark Policy, Landmark was required to provide an immediate and complete defense to all claims.

45.     Plaintiff, at all times herein mentioned, performed all of the terms and conditions that were required to be performed under the Landmark Policy, and if any policy conditions were not complied with, the insurer has not been substantially prejudiced and/or the insured is equitably excused from complying with those conditions. All premiums for the Landmark Policy have been paid. Plaintiff intended and expected thereby to be assured of peace of mind and financial and economic security in the event of claims made and tendered under the Landmark Policy.

46.     Landmark breached the Landmark Policy by refusing to provide a defense to the Receiver, Shechter and Applebaum actions.

47.     Landmark further breached the Landmark Policy as follows:

        a.     Failing and refusing to make a reasonable, prompt and adequate investigation of Plaintiff's claim for benefits or the allegations being alleged in the Receiver, Shechter and Applebaum actions.

        b.     Failing and refusing to provide Plaintiff with attorneys, and/or to provide adequate payment for Plaintiff's attorneys, expenses and costs incurred in the Receiver, Shechter and Applebaum actions.

        c.     Resolving ambiguities in the Landmark Policy to Landmark's benefit;

        d.     By the above and other conduct, violating the California Insurance Code and the Regulations of the California Department of Insurance;

        e.     Handling the claim of Plaintiff in an unfair manner;

        f.     Misrepresenting to Plaintiff pertinent facts and insurance policy provisions relating to coverages at issue.

        g.     Failing and refusing to acknowledge and act reasonably promptly upon communications from Plaintiff with respect to the Receiver, Shechter and Applebaum actions arising under the Landmark Policy;

1        h.     Failing and refusing to adopt and implement reasonable standards for the
2 prompt investigation and processing of claims arising under the Landmark Policy;

3        j.     Failing and refusing to settle the case when there was an opportunity to do
4 so and/or provide indemnity coverage when that coverage was required; and

5        k.     Requiring Plaintiff to retain and pay for coverage counsel and to file an
6 action to obtain benefits under the Landmark Policy.

7     48.    As a proximate result of Landmark's refusals as herein alleged, and breaches
8 of the Policy, Plaintiff was compelled to engage and pay defense counsel as well as suffer a
9 loss of reputation and good will as a result of the action filed against it.  As a further and
10 proximate result of said breaches, Plaintiff was deprived of Landmark's resources to fully
11 defend against the allegations alleged in the Receiver, Shechter and Applebaum actions.

12     49.    As a further direct and proximate result of the conduct of Landmark in refusing
13 to pay benefits due to Plaintiff and its conduct as set forth herein, Plaintiff has been damaged
14 thereby, including benefits withheld, attorneys' fees and costs incurred in defense of the
15 Receiver, Shechter and Applebaum actions, and attorneys' fees and costs incurred to obtain
16 the benefits to which Plaintiff was and is entitled under the Landmark Policy, and other
17 economic losses, and has been damaged in other amounts not fully ascertained, but within
18 the unlimited jurisdiction of the Court.

19     WHEREFORE, Plaintiff prays judgment against Landmark as hereinafter set forth.

20             **VII.    FOURTH CAUSE OF ACTION**

21     **(Breach of the Implied Covenant of Good Faith and Fair Dealing**

22                  **Against Landmark)**

23     50.    Plaintiff alleges and incorporates by reference paragraphs 1-19 and 38-49 as if
24 fully set forth herein in support of this claim for relief.

25     51.    At all times herein relevant, when Landmark entered into the Landmark Policy
26 and accepted premiums, it agreed, and was legally bound to, act in good faith and deal fairly
27 with Plaintiff and thereby assumed obligations of good faith and fair dealing toward Plaintiff
28 and was legally bound to abide by such obligations.  Nevertheless, as set forth more

particularly herein, Landmark failed and refused to act in good faith and deal fairly with Plaintiff, and otherwise breached the implied covenants of good faith and fair dealing.

52.     Without any reasonable basis for doing so, and with full knowledge and/or reckless disregard of the consequences thereof, Landmark engaged in the following unreasonable conduct in violation of the duty of good faith and fair dealing:

a.     Failing and refusing to make a reasonable, prompt and adequate investigation of Plaintiff's claim for benefits or the allegations being alleged in the Receiver, Shechter and Applebaum actions.

b.     Failing and refusing to provide Plaintiff with attorneys, and/or to provide adequate and timely payment for Plaintiff's attorneys, expenses and costs incurred in the Receiver, Shechter and Applebaum actions.

c.     Resolving ambiguities in the Landmark Policy to Landmark's benefit;

d.     By the above and other conduct, violating the California Insurance Code and the Regulations of the California Department of Insurance;

e.     Handling the claim of Plaintiff in an unfair manner;

f.     Misrepresenting to Plaintiff pertinent facts and insurance policy provisions relating to coverages at issue.

g.     Failing and refusing to acknowledge and act reasonably promptly upon communications from Plaintiff with respect to the Receiver, Shechter and Applebaum actions arising under the Landmark Policy;

h.     Failing and refusing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the Landmark Policy, including incredible delays in payment of defense fees and costs;

j.     Failing and refusing to settle the case when there was an opportunity to do so and/or provide indemnity coverage when that coverage was required. On or around February 19, 2021, counsel for claimants in the Receiver, Shechter and Applebaum actions sent a letter agreeing to settle all three actions for payment of the remaining policy limits. This letter was immediately forwarded to Landmark's counsel. Despite having an awareness of the exposure in

1 this action, Landmark did not agree to pay its policy limits to contribute to the policy limits
2 demand; and

3          k.       Requiring Plaintiff to retain and pay for coverage counsel and to file an
4 action to obtain benefits under the Landmark Policy.

5     53.    As a proximate result of Landmark's bad faith conduct, Plaintiff was compelled
6 to engage counsel and to incur attorneys' fees, costs and expenses in the defense of the
7 Action, some, but not all of which was reimbursed by Landmark, and Plaintiff suffered further
8 exposure for interest and costs, as well as a loss of reputation and good will as a result of the
9 action filed against it, and it has sustained other economic losses and/or damages, all in
10 amounts not yet fully ascertained but within the unlimited jurisdiction of the Court.

11    54.    As a further proximate result of the bad faith conduct of Defendant, Plaintiff has
12 incurred and will continue to incur attorneys' fees and costs to obtain the coverage and
13 benefits owed by Landmark to Plaintiff, and has been and will be otherwise damaged thereby
14 in an amount not yet fully ascertained, but according to proof at trial.

15    WHEREFORE, Plaintiff prays for judgment against Landmark as hereinafter set
16 forth.

17              **VIII.  FIFTH CAUSE OF ACTION**
18              **(Declaratory Relief as to all Defendants)**

19    55.    Plaintiff alleges and incorporates by reference each and every preceding
20 paragraph in support of this claim for relief.

21    56.    An actual controversy has arisen and now exists between MPC, Landmark and
22 Nautilus as to which insurer is obligated to defend and provide coverage for the Receiver,
23 Shechter, and Applebaum actions. Pursuant to 28 U.S.C. § 2201, this Court has the power to
24 make binding declarations of the rights and obligations of the parties herein, and to
25 adjudicate the dispute between the parties herein. Such a declaration is necessary and
26 appropriate at this time in order for the parties to ascertain the obligations of the insurers with
27 respect to insurance coverage for the underlying actions to provide funds to defend MPC
28 against and to settle the underlying actions/provide funds for indemnification against any

1   judgments.

2       57.     MPC herein seeks a declaration from the court as to whether the Landmark
3   Policy or the Nautilus Policy provides primary professional liability coverage to MPC to the
4   Receiver, Shechter, and Applebaum actions by determining if these pending actions relate
5   back to the Rhyme action. If the Receiver, Shechter, and Applebaum actions relate back to
6   the Rhyme action, then Landmark must provide a defense and indemnify coverage. If they do
7   not relate back, then Nautilus must provide defense and indemnity coverage.

8       58.     MPC respectfully requests that this court declare that Westchester, the follow
9   form excess insurer that issued excess policies on top of both the Landmark Policy and the
10  Nautilus Policy be bound to the court's determination.

11      59.     MPC respectfully requests that this court declare that all plaintiffs in the
12  Receiver, Shechter, and Applebaum actions, who have been named as defendants herein,
13  be bound to the Court's determination.

14          WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, as
15  hereinafter set forth.

16  **ON THE FIRST AND THIRD CAUSES OF ACTION:**

17      1.      For general and special damages according to proof;

18      2.      For interest on said damages at the legal rate, according to proof;

19      3.      Costs of suit incurred herein;

20      4.      For such other and further relief as the Court may deem just and proper.

21  **ON THE SECOND AND FOURTH CAUSES OF ACTION:**

22      1.      For attorneys' fees and expenses, and costs incurred to obtain the benefits
23              to which Plaintiff is entitled under the Landmark Policy or the Nautilus Policy;

24      2.      For such other and further relief as the Court may deem just and proper.

25  **ON THE FIFTH CAUSE OF ACTION:**

26      1.      For a judicial determination as to which policy -- the Landmark Policy or
27              Nautilus Policy -- provides primary coverage to MPC for the Receiver,
28              Shechter, and Applebaum actions;

2.    For a judicial declaration that Westchester must provide follow form excess coverage over whichever policy the Court declares applies.

3.    For a judicial declaration that plaintiffs in the Receiver, Shechter, and Applebaum, who have been named as defendants herein, be bound to the Court's determination.

4.    For recovery of its costs of suit herein; and

5.    For such other and further relief as the Court may deem just and proper.

Dated: January 14, 2022          HESS, BOWER ADAMS-HESS, PC


By: _____
         Randy M. Hess, Esq.
         Nicole S. Adams-Hess, Esq.
         Attorneys for Plaintiff


## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all claims and causes of action alleged herein.


Dated: January 14, 2022          Respectfully submitted,

HESS, BOWER ADAMS-HESS, PC


By: _____
         Randy M. Hess, Esq.
         Nicole S. Adams-Hess, Esq.
         Attorneys for Plaintiff

1 | HESS, BOWER, ADAMS-HESS, PC
Randy M. Hess (SBN 88635)
2 | Nicole S. Adams-Hess (SBN 286632)
2105 South Bascom Avenue, Suite 200
3 | Campbell, California 95008
Telephone: (408) 341-0234
4 | Facsimile: (408) 341-0250
rhess@hbalawgroup.com
5 | nadamshess@hbalawgroup.com

6 | Attorneys for Plaintiff
MILLS POTOCZAK AND CO.

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

11 | MILLS POTOCZAK AND CO. a corporation,

| Case No.

12

13 | Plaintiff,

| **COMPLAINT FOR:**
| 1. **BREACH OF CONTRACT;**

14 | v.

| 2. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**

15 | NAUTILUS INSURANCE COMPANY, business entity form unknown, LANDMARK AMERICAN INSURANCE COMPANY, an

| 3. **DECLARATORY RELIEF**

16 | Oklahoma Stock Company; WESTCHESTER SURPLUS LINES

| [This case is not a limited civil case and the demand does exceed $25,000.]

17 | INSURANCE COMPANY, a stock company; KONSTANTIN SHECHTER,

18 | individually and as co-Trustee of the Schechter Family Trust dated May 22,

| **JURY TRIAL REQUESTED**
(Fed. R. Civ. P. 38(b))

19 | 2009; SVETLANA AVERBUKH, an individual on behalf of themselves and all

20 | others similarly situated; ARNOLD APPLEBAUM, an individual on behalf of

21 | himself and all other similarly situated; Thomas Hebrank, in his capacity as Court-

22 | appointed permanent receiver and successor trustee for the PWCG Trust; and

23 | DOES 1 through 100, inclusive,

24 | Defendants.

25

26 | Plaintiff Mills Potoczak and Company ("MPC" or "Plaintiff") alleges:

27 | **I.   JURISDICTION**

28 | 1.   Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as the action is between citizens of different states, and the amount in controversy exceeds the sum of

1   $75,000, exclusive of interest and costs.

2       2.      The Court also has jurisdiction over this matter under 28 U.S.C. § 1367(a)
3   under the doctrine of supplemental jurisdiction, in that this action arises from a common
4   nucleus of operative facts as, and is substantially related to the claims brough in the action
5   currently before this Court, titled *Thomas Hebrank v. Mills, Potoczak & Company, PC*, Case
6   Number 2:20-cv-8097.

7       3.      Venue in the Central District of California is proper under 28 U.S.C. §
8   1391(b)(2) because a substantial part of events or omissions giving rise to the claim at issue
9   occurred in the Central District of California, as the insurance coverage action concerns
10  underlying litigation taking place in this district, with underlying wrongful acts also alleged to
11  have taken place in this judicial district.

12                                  **II. PARTIES**

13      4.      At all times mentioned herein Plaintiff is and was a corporation duly authorized
14  and created pursuant to the laws of the Ohio.

15      5.      Upon information and belief, at all times herein mentioned, defendant
16  NAUTILUS INSURANCE COMPANY ("Nautilus") is a citizen of Arizona, and is and was an
17  insurance company qualified to do business, and doing business, in the State of California,
18  within the Central District of California, at all relevant to this dispute.

19      6.      Upon information and belief, at all times herein mentioned, Defendant
20  LANDMARK AMERICAN INSURANCE COMPANY ("Landmark") is a citizen of Oklahoma,
21  and is and was an insurance company qualified to do business in the State of California, and
22  doing business, in the State of California, within the Central District of California, at all
23  relevant to this dispute.

24      7.      Upon information and belief, at all times herein mentioned, defendant
25  WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("Westchester") is a citizen of
26  Georgia, and is and was an insurance company qualified to do business in the State of
27  California, and doing business, in the State of California, within the Central District of
28  California, at all relevant to this dispute.

8. Upon information and belief, at all times herein mentioned, defendant KONSTANTIN SHECHTER, is an individual and co-Trustee of the Schechter Family Trust dated May 22, 2009, and is a California resident and resides in this judicial district.

9. Upon information and belief, at all times herein mentioned, defendant SVETLANA AVERBUKH, is a California resident and resides in this judicial district.

10. Upon information and belief, at all times herein mentioned, defendant ARNOLD APPLEBAUM is a California resident and resides in this judicial district.

11. Upon information and belief, at all times herein mentioned, defendant Thomas Hebrank, in his capacity as Court-appointed permanent receiver and successor trustee for the PWCG Trust, is a court-appointed permanent receiver and California resident.

12. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when they are ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the said fictitiously-named defendants is responsible and liable in some manner for the occurrences herein alleged, or upon the policies of insurance hereinafter alleged, and that plaintiff's damages as herein alleged were proximately caused by defendants' conduct and/or any of them, and/or each of them.

13. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, defendants, and each of them, were acting as the agents, servants, successors, predecessors, principals, joint venturers, and employees of each other, and were acting within the full course and scope of said relationships, and with the full knowledge, consent and ratification, either expressed or implied, of each of the other said named defendants.

### III.   GENERAL ALLEGATIONS

14.   MPC is and was a public accounting firm that provides escrow, trustee and related services in the life settlements market. Life settlements are investments where interests in life insurance policies are sold to third parties. There are currently three lawsuits proceeding against MPC alleging claims of professional negligence in connection with its escrow and trustee services for a particular life settlement trust, the Pacific West Capital Group ("PWCG") Trust. These lawsuits are:

1.   *Thomas C. Hebrank, in his capacity as Court-appointed permanent received and successor trustee for PWCG Trust v. Mills, Potoczak & Company, P.C.,* United States District Court, Central District of California, Case No. 2:20-cv-8097 ("Receiver").

2.   *Konstantin Shechter, et al., v. Pacific West Capital Group, Inc., et. al.,* Los Angeles Case No. BC621512 ("Shechter")

3.   *Arnold N. Applebaum, et al., v. Pacific West Capital Group, Inc., et al.,* Case No. BC652409) ("Applebaum") The receivership stayed the California Superior Court cases. Applebaum and Shechter have been deemed to be related by the LA Superior Court. Shechter is the lead case, and Applebaum has been stayed pending the outcome of Shechter.

There are also two additional lawsuits that have been dismissed that were brought by other investors in the PWCG Trust:

1.   *William Names v. Pacific West Capital Group, Inc., et al.,* Case No. BC658582. ("Names").

2.   *Rhyme v. Pacific West Capital Group, Inc., et al.,* Cal. Super. Ct., Los Angeles County Case No. BC606213 ("Rhyme").

15.   This action concerns insurance coverage issues relating to these actions. MPC received notice of the Rhyme action during the Landmark policy period and complied with all policy provisions in requesting a defense and coverage from Landmark. Landmark agreed to provide a defense to the Rhyme action under its professional liability policy issued to MPC subject to a reservation of rights, on or around February 25, 2016. The Rhyme action was dismissed before MPC exhausted the deductible in the Landmark policy.

16.     Subsequently, the Names, Shechter, Applebaum and Receiver actions were filed. MPC timely tendered these lawsuits to Nautilus. MPC also provided notice of these lawsuits to Landmark.

17.     Landmark denied coverage the Names, Shechter, Applebaum and Receiver actions, asserting that these actions were not filed and reported during its policy year, and that they did not relate back to the Rhyme action. Nautilus agreed to provide a defense to MPC to the Receiver, Shechter, and Applebaum actions under a reservation of rights.

18.     However, despite agreeing to provide a defense, Nautilus contends that it does not owe MPC a defense because it asserts that the Receiver, Shechter, and Applebaum actions relate back to the Rhyme action, and refuses to pay sufficient indemnity amounts to settle the cases. Nautilus asserts that Landmark would be the proper insurer to provide a defense and coverage to the currently pending actions because it asserts that these lawsuits relate back to the Rhyme action, which Landmark defended. Landmark contends that the cases are not related to Rhyme and it has no obligation to defend or indemnify MPC for the Receiver, Shechter or Applebaum actions. MPC has been placed in an impossible position where plaintiffs in the underlying actions are seeking tens of millions of dollars in damages from it, and its insurers are refusing to fully defend and settle these actions.

19.     MPC brings this action to obtain the coverage to which it is entitled, and to seek recompense for the significant legal fees and costs it has had to incur and pay in order to obtain benefits owed under the policy.

## IV.     FIRST CAUSE OF ACTION

### (Breach of Contract against Nautilus)

20.     Plaintiff alleges and incorporates by reference each and every preceding paragraph in support of this claim for relief.

21.     Plaintiff and Nautilus entered into a contract of insurance for the purpose of providing a policy of professional liability insurance to Plaintiff that specifically provided insurance coverage for claims of professional negligence in "escrow, policy certification, premium payment, life tracking, death claims and trust services performed in connection with

1 life settlements." (Exhibit A, p. 1.) Defendant, by its duly authorized agents, for valuable

2 consideration, executed, delivered and issued policy number MPL 1468418-P1 to Plaintiff

3 with $5,000,000 in limits of liability. The Policy was in effect from January 21, 2016 to January

4 21, 2017, and provided coverage for allegations of professional negligence – a true and

5 correct copy is attached hereto as Exhibit A and incorporated herein by reference ("Nautilus

6 Policy"). By the terms of the Nautilus Policy, Nautilus agreed to provide Plaintiff with liability

7 insurance, including a duty to defend, as well as other coverages. The Nautilus Policy by its

8 terms was effective at all times herein relevant, and was maintained in full force and in effect

9 at all times herein relevant.

10      22.      By the terms of the Nautilus Policy, Nautilus agreed to provide coverage for:

**A.      Professional Liability Insurance Coverage**

The Company agrees to pay on behalf of the Insured all sums in excess of the Deductible, up to the Limit of Liability, that the Insured shall become legally obligated to pay as **Damages** and **Claim Expenses** arising from a **Claim** that is both first made against the Insured and reported in writing to the Company in accordance with Section V.A. of this Policy, for any actual or alleged **Wrongful Act**, provided that:

1.      no **Insured** gave notice to a **Prior Insurer** of such **Claim** or a **Related Claim**; and

2.      no **Insured** gave notice to a **Prior Insurer** of any such **Wrongful Act** or **Related Wrongful Act**; and

3.      prior to the date an **Insured** first becomes an **Insured** under this Policy, or became an **Insured** under the first policy issued to the Named Insured by the Company (or its subsidiary or affiliated insurers), and such insurance coverage has been continuously maintained with the Company (or its subsidiary or affiliated insurers) until the effective date of this Policy, whichever is earlier, no Insured had a basis to believe that any **Wrongful Act**, or **Related Wrongful Act**, might reasonably be expected to be the basis of a **Claim**; and

4.      such **Wrongful Act** happened on or after the **Retroactive Date** and before the end of the **Policy Period**.

23.      The Nautilus Policy defines "related claim" to mean: "all Claims arising out of a

single **Wrongful Act**[1], or arising out of **Related Wrongful Acts** in the performance of **Professional Services**." "**Related Wrongful Acts** means all **Wrongful Acts** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision."

24.    Nautilus asserts that the Receiver, Shechter and Applebaum actions all relate back to the Rhyme action and are excluded from coverage on that basis. The policy excludes coverage for claims made prior to the inception of its policy period. The Nautilus Policy also has a specific claim exclusion for any claim "based on, arising from, or in any way involving" the Rhyme action. Despite this, Nautilus has agreed to provide a defense to MPC, and as a defending insurer, Nautilus must provide a full and complete defense, and has an obligation to settle, without taking coverage issues into consideration.

25.    Nautilus agreed under the terms of the Nautilus Policy to pay those sums that its insured became legally obligated to pay as damages for claims of professional negligence. Nautilus agreed to act in good faith and deal fairly with MPC when it entered into the Nautilus Policy.

26.    The allegations alleged in the Receiver, Shechter, and Applebaum actions, showed a potential for coverage under the Nautilus Policy, requiring that Nautilus provide an immediate and complete defense to all claims. While Nautilus has agreed to provide a defense, it has refused to settle this case.

27.    Plaintiff, at all times herein mentioned, performed all of the terms and conditions that were required to be performed under the Nautilus Policy, including attending a coverage mediation with Nautilus in November 2021. All premiums for the Nautilus Policy have been paid. Plaintiff intended and expected thereby to be assured of peace of mind and financial and economic security in the event of claims made and tendered under the Nautilus Policy.

28.    Nautilus breached the Nautilus Policy by refusing to settle the Receiver, Shechter, and Applebaum actions when there was an opportunity to do so, despite purportedly providing a defense, and the agreements and obligations contained in the

---

[1] Bolded terms refer to defined terms in the policies.

1  Nautilus Policy.

2      29.    Nautilus further breached the Nautilus Policy as follows:

3          a.    Failing and refusing to make a reasonable, prompt and adequate
4  investigation of Plaintiff's claim for benefits or the allegations being alleged in the Receiver,
5  Shechter and Applebaum actions.

6          b.    Failing and refusing to timely provide Plaintiff with attorneys, and/or to
7  provide timely, adequate and complete payment for Plaintiff's attorneys, expenses and costs
8  incurred in the Receiver, Shechter and Applebaum actions.

9          c.    Resolving ambiguities in the Nautilus Policy to Nautilus' benefit;

10         d.    By the above and other conduct, violating the California Insurance Code
11 and the Regulations of the California Department of Insurance;

12         e.    Handling the claim of Plaintiff in an unfair manner;

13         f.    Misrepresenting to Plaintiff pertinent facts and insurance policy provisions
14 relating to coverages at issue.

15         g.    Failing and refusing to acknowledge and act reasonably promptly upon
16 communications from Plaintiff with respect to the Receiver, Shechter and Applebaum actions
17 arising under the Nautilus Policy;

18         h.    Failing and refusing to adopt and implement reasonable standards for the
19 prompt investigation and processing of claims arising under the Nautilus Policy, including
20 incredible delays in payment of defense fees and costs;

21         j.    Failing and refusing to settle the case when there was an opportunity to do
22 so and/or provide indemnity coverage when that coverage was required; and

23         k.    Requiring Plaintiff to retain and pay for coverage counsel and to file an
24 action to obtain benefits under the Nautilus Policy.

25     30.    As a proximate result of Nautilus' refusals as herein alleged, and breaches of
26 the Policy, Plaintiff was compelled to engage and pay defense counsel as well as suffer a
27 loss of reputation and good will as a result of the actions filed against it.  As a further and
28 proximate result of said breaches, Plaintiff was deprived of Defendant's resources to fully

1 | defend against the allegations alleged in the Action.

2 |     31.    As a further direct and proximate result of the conduct of Defendant in refusing
3 | to pay benefits due to Plaintiff and its conduct as set forth herein, Plaintiff has been damaged
4 | thereby, including benefits withheld, attorneys' fees and costs incurred in defense of the
5 | underlying actions, and attorneys' fees and costs incurred to obtain the benefits to which
6 | Plaintiff was and is entitled under the Nautilus Policy, and other economic losses, and has
7 | been damaged in other amounts not fully ascertained, but within the unlimited jurisdiction of
8 | the Court.

9 |     WHEREFORE, Plaintiff prays judgment against Nautilus as hereinafter set forth.

10 | **V.    SECOND CAUSE OF ACTION**

11 | **(Breach of the Implied Covenant of Good Faith and Fair Dealing**

12 | **Against Nautilus)**

13 |     32.    Plaintiff alleges and incorporates by reference each and every preceding
14 | paragraph in support of this claim for relief.

15 |     33.    At all times herein relevant, when Nautilus entered into the Nautilus Policy and
16 | accepted premiums, it agreed, and was legally bound to, act in good faith and deal fairly with
17 | Plaintiff and thereby assumed obligations of good faith and fair dealing toward Plaintiff and
18 | was legally bound to abide by such obligations.  Nevertheless, as set forth more particularly
19 | herein, Nautilus failed and refused to act in good faith and deal fairly with Plaintiff, and
20 | otherwise breached the implied covenant of good faith and fair dealing.

21 |     34.    Without any reasonable basis for doing so, and with full knowledge and/or
22 | reckless disregard of the consequences thereof, Nautilus engaged in the following
23 | unreasonable conduct in violation of the duty of good faith and fair dealing:

24 |     a.    Failing and refusing to make a reasonable, prompt and adequate
25 | investigation of Plaintiff's claim for benefits or the allegations being alleged in the Receiver,
26 | Shechter and Applebaum actions.

27 |

28 |

b.     Failing and refusing to provide Plaintiff with attorneys, and/or to provide adequate and timely payment for Plaintiff's attorneys, expenses and costs incurred in the Receiver, Shechter and Applebaum actions.

c.     Resolving ambiguities in the Nautilus Policy to Nautilus' benefit;

d.     By the above and other conduct, violating the California Insurance Code and the Regulations of the California Department of Insurance;

e.     Handling the claim of Plaintiff in an unfair manner;

f.     Misrepresenting to Plaintiff pertinent facts and insurance policy provisions relating to coverages at issue.

g.     Failing and refusing to acknowledge and act reasonably promptly upon communications from Plaintiff with respect to the Receiver, Shechter and Applebaum actions arising under the Nautilus Policy;

h.     Failing and refusing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the Nautilus Policy, including incredible delays in payment of defense fees and costs;

j.     Failing and refusing to settle the case when there was an opportunity to do so and/or provide indemnity coverage when that coverage was required. On or around February 19, 2021, counsel for claimants in the Receiver, Shechter and Applebaum actions sent a letter agreeing to settle all three actions for payment of the remaining policy limits. This letter was immediately forwarded to Nautilus' counsel. Despite having an awareness of the exposure in this action, Nautilus did not agree to pay its policy limits to contribute to the policy limits demand; and

k.     Requiring Plaintiff to retain and pay for coverage counsel and to file an action to obtain benefits under the Nautilus Policy.

35.     As a proximate result of Nautilus' bad faith conduct, Plaintiff was compelled to engage counsel and to incur attorneys' fees, costs and expenses in the defense of the Action, some, but not all of which was reimbursed by Nautilus, and Plaintiff suffered further exposure for interest and costs, as well as a loss of reputation and good will as a result of the action

filed against it, and it has sustained other economic losses and/or damages, all in amounts not yet fully ascertained but within the unlimited jurisdiction of the Court.

36.     As a further proximate result of the bad faith conduct of Defendant, Plaintiff has incurred and will continue to incur attorneys' fees and costs to obtain the coverage and benefits owed by Nautilus to Plaintiff, and has been and will be otherwise damaged thereby in an amount not yet fully ascertained, but according to proof at trial.

WHEREFORE, Plaintiff prays for judgment against Nautilus as hereinafter set forth.

## VI.     THIRD CAUSE OF ACTION
### (Breach of Contract against Landmark)

37.     Plaintiff alleges and incorporates by reference paragraphs 1-19 as if fully set forth herein in support of this claim for relief.

38.     Plaintiff and Landmark entered into a contract of insurance for the purpose of providing a policy of professional liability insurance to Plaintiff. Landmark, by its duly authorized agents, for valuable consideration, executed, delivered and issued policy number LHR749196 to Plaintiff with $5,000,000 in limits of liability. The Policy was in effect from January 21, 2015 to January 21, 2016, and specifically provided insurance coverage for claims of professional negligence in "escrow, policy certification, premium payment, life tracking, death claims and trust services performed in connection with life settlements." (Exhibit B, p. 1.). A true and correct copy is attached hereto as Exhibit B and incorporated herein by reference ("Landmark Policy"). By the terms of the Landmark Policy, Landmark agreed to provide Plaintiff with liability insurance, including a duty to defend, as well as other coverages. The Landmark Policy by its terms was effective at all times herein relevant, and was maintained in full force and in effect at all times herein relevant.

39.     By the terms of the Landmark Policy, Landmark agreed to provide coverage for:

**Part I.  Insuring Agreement**

**A.  Covered Services**

The Company will pay on behalf of the Insured, as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as Damages and associated Claim Expenses arising out of a negligent act, error or omission, **Advertising Liability** or **Personal Injury**, even if the **Claim** asserted is groundless, false or fraudulent, in the rendering of or failure to render professional services as described in the Declarations, provided that the:

1. **Claim** is first made against the Insured during the **Policy Period**, and reported to the Company no later than thirty (30) days after the end of the **Policy Period**;

2. Negligent act, error or omission, **Advertising Liability** or **Personal Injury** took place in a covered territory;

3. Negligent act, error or omission, **Advertising Liability** or **Personal Injury** took place after the Retroactive Date as shown in the Declarations.

40.     The Landmark Policy also included a duty to defend potentially covered claims.

41.     The Landmark Policy provides coverage for claims first made and reported during its policy period, and also provides a defense and coverage for claims made after the policy period expires so long as the claim relates back to an earlier claim made during the policy period. The Landmark Policy provides that the subsequent claims will "be deemed as first made at the time the incident, occurrence or offense giving rise to such **Claim** was first provided." (Ex. B. p. 9.) "Additionally, **Claims** that arise from an incident, occurrence or offense first reported by the Insured during the **Policy Period** and accepted by the Company in accordance with **Part IV. A** Notice of Claim will be considered a **Claim** first made during the **Policy Period**." (Ex. B, p. 8.)

42.     Landmark takes the opposite position as Nautilus and asserts that the Receiver, Shechter and Applebaum actions do not relate back to the Rhyme action and are excluded from coverage on that basis. Landmark asserts that the current litigation does not relate back to the Rhyme claim and is not deemed to have been made during the Landmark policy period.

43.     Landmark agreed under the terms of the Landmark Policy to pay those sums that the insureds became legally obligated to pay as damages for claims of professional negligence. Landmark agreed to act in good faith and deal fairly with MPC when it entered into the Landmark Policy.

44.     If the allegations alleged in the Receiver, Shechter, and Applebaum actions,

showed a potential for coverage under the Landmark Policy, Landmark was required to provide an immediate and complete defense to all claims.

45.     Plaintiff, at all times herein mentioned, performed all of the terms and conditions that were required to be performed under the Landmark Policy, and if any policy conditions were not complied with, the insurer has not been substantially prejudiced and/or the insured is equitably excused from complying with those conditions. All premiums for the Landmark Policy have been paid. Plaintiff intended and expected thereby to be assured of peace of mind and financial and economic security in the event of claims made and tendered under the Landmark Policy.

46.     Landmark breached the Landmark Policy by refusing to provide a defense to the Receiver, Shechter and Applebaum actions.

47.     Landmark further breached the Landmark Policy as follows:

a.      Failing and refusing to make a reasonable, prompt and adequate investigation of Plaintiff's claim for benefits or the allegations being alleged in the Receiver, Shechter and Applebaum actions.

b.      Failing and refusing to provide Plaintiff with attorneys, and/or to provide adequate payment for Plaintiff's attorneys, expenses and costs incurred in the Receiver, Shechter and Applebaum actions.

c.      Resolving ambiguities in the Landmark Policy to Landmark's benefit;

d.      By the above and other conduct, violating the California Insurance Code and the Regulations of the California Department of Insurance;

e.      Handling the claim of Plaintiff in an unfair manner;

f.      Misrepresenting to Plaintiff pertinent facts and insurance policy provisions relating to coverages at issue.

g.      Failing and refusing to acknowledge and act reasonably promptly upon communications from Plaintiff with respect to the Receiver, Shechter and Applebaum actions arising under the Landmark Policy;

h.      Failing and refusing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the Landmark Policy;

j.      Failing and refusing to settle the case when there was an opportunity to do so and/or provide indemnity coverage when that coverage was required; and

k.      Requiring Plaintiff to retain and pay for coverage counsel and to file an action to obtain benefits under the Landmark Policy.

48.    As a proximate result of Landmark's refusals as herein alleged, and breaches of the Policy, Plaintiff was compelled to engage and pay defense counsel as well as suffer a loss of reputation and good will as a result of the action filed against it.  As a further and proximate result of said breaches, Plaintiff was deprived of Landmark's resources to fully defend against the allegations alleged in the Receiver, Shechter and Applebaum actions.

49.    As a further direct and proximate result of the conduct of Landmark in refusing to pay benefits due to Plaintiff and its conduct as set forth herein, Plaintiff has been damaged thereby, including benefits withheld, attorneys' fees and costs incurred in defense of the Receiver, Shechter and Applebaum actions, and attorneys' fees and costs incurred to obtain the benefits to which Plaintiff was and is entitled under the Landmark Policy, and other economic losses, and has been damaged in other amounts not fully ascertained, but within the unlimited jurisdiction of the Court.

WHEREFORE, Plaintiff prays judgment against Landmark as hereinafter set forth.

## VII.    FOURTH CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing

### Against Landmark)

50.    Plaintiff alleges and incorporates by reference paragraphs 1-19 and 38-49 as if fully set forth herein in support of this claim for relief.

51.    At all times herein relevant, when Landmark entered into the Landmark Policy and accepted premiums, it agreed, and was legally bound to, act in good faith and deal fairly with Plaintiff and thereby assumed obligations of good faith and fair dealing toward Plaintiff and was legally bound to abide by such obligations.  Nevertheless, as set forth more

1 particularly herein, Landmark failed and refused to act in good faith and deal fairly with

2 Plaintiff, and otherwise breached the implied covenants of good faith and fair dealing.

3     52.    Without any reasonable basis for doing so, and with full knowledge and/or

4 reckless disregard of the consequences thereof, Landmark engaged in the following

5 unreasonable conduct in violation of the duty of good faith and fair dealing:

6     a.    Failing and refusing to make a reasonable, prompt and adequate

7 investigation of Plaintiff's claim for benefits or the allegations being alleged in the Receiver,

8 Shechter and Applebaum actions.

9     b.    Failing and refusing to provide Plaintiff with attorneys, and/or to provide

10 adequate and timely payment for Plaintiff's attorneys, expenses and costs incurred in the

11 Receiver, Shechter and Applebaum actions.

12     c.    Resolving ambiguities in the Landmark Policy to Landmark's benefit;

13     d.    By the above and other conduct, violating the California Insurance Code

14 and the Regulations of the California Department of Insurance;

15     e.    Handling the claim of Plaintiff in an unfair manner;

16     f.    Misrepresenting to Plaintiff pertinent facts and insurance policy provisions

17 relating to coverages at issue.

18     g.    Failing and refusing to acknowledge and act reasonably promptly upon

19 communications from Plaintiff with respect to the Receiver, Shechter and Applebaum actions

20 arising under the Landmark Policy;

21     h.    Failing and refusing to adopt and implement reasonable standards for the

22 prompt investigation and processing of claims arising under the Landmark Policy, including

23 incredible delays in payment of defense fees and costs;

24     j.    Failing and refusing to settle the case when there was an opportunity to do

25 so and/or provide indemnity coverage when that coverage was required. On or around February

26 19, 2021, counsel for claimants in the Receiver, Shechter and Applebaum actions sent a letter

27 agreeing to settle all three actions for payment of the remaining policy limits. This letter was

28 immediately forwarded to Landmark's counsel. Despite having an awareness of the exposure in

1 this action, Landmark did not agree to pay its policy limits to contribute to the policy limits
2 demand; and

3          k.      Requiring Plaintiff to retain and pay for coverage counsel and to file an
4 action to obtain benefits under the Landmark Policy.

5      53.     As a proximate result of Landmark's bad faith conduct, Plaintiff was compelled
6 to engage counsel and to incur attorneys' fees, costs and expenses in the defense of the
7 Action, some, but not all of which was reimbursed by Landmark, and Plaintiff suffered further
8 exposure for interest and costs, as well as a loss of reputation and good will as a result of the
9 action filed against it, and it has sustained other economic losses and/or damages, all in
10 amounts not yet fully ascertained but within the unlimited jurisdiction of the Court.

11      54.     As a further proximate result of the bad faith conduct of Defendant, Plaintiff has
12 incurred and will continue to incur attorneys' fees and costs to obtain the coverage and
13 benefits owed by Landmark to Plaintiff, and has been and will be otherwise damaged thereby
14 in an amount not yet fully ascertained, but according to proof at trial.

15      WHEREFORE, Plaintiff prays for judgment against Landmark as hereinafter set
16 forth.

### VIII.  FIFTH CAUSE OF ACTION

### (Declaratory Relief as to all Defendants)

19      55.     Plaintiff alleges and incorporates by reference each and every preceding
20 paragraph in support of this claim for relief.

21      56.     An actual controversy has arisen and now exists between MPC, Landmark and
22 Nautilus as to which insurer is obligated to defend and provide coverage for the Receiver,
23 Shechter, and Applebaum actions. Pursuant to 28 U.S.C. § 2201, this Court has the power to
24 make binding declarations of the rights and obligations of the parties herein, and to
25 adjudicate the dispute between the parties herein. Such a declaration is necessary and
26 appropriate at this time in order for the parties to ascertain the obligations of the insurers with
27 respect to insurance coverage for the underlying actions to provide funds to defend MPC
28 against and to settle the underlying actions/provide funds for indemnification against any

1  judgments.

2      57.    MPC herein seeks a declaration from the court as to whether the Landmark

3  Policy or the Nautilus Policy provides primary professional liability coverage to MPC to the

4  Receiver, Shechter, and Applebaum actions by determining if these pending actions relate

5  back to the Rhyme action. If the Receiver, Shechter, and Applebaum actions relate back to

6  the Rhyme action, then Landmark must provide a defense and indemnify coverage. If they do

7  not relate back, then Nautilus must provide defense and indemnity coverage.

8      58.    MPC respectfully requests that this court declare that Westchester, the follow

9  form excess insurer that issued excess policies on top of both the Landmark Policy and the

10  Nautilus Policy be bound to the court's determination.

11      59.    MPC respectfully requests that this court declare that all plaintiffs in the

12  Receiver, Shechter, and Applebaum actions, who have been named as defendants herein,

13  be bound to the Court's determination.

14      WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, as

15  hereinafter set forth.

16  **ON THE FIRST AND THIRD CAUSES OF ACTION:**

17      1.    For general and special damages according to proof;

18      2.    For interest on said damages at the legal rate, according to proof;

19      3.    Costs of suit incurred herein;

20      4.    For such other and further relief as the Court may deem just and proper.

21  **ON THE SECOND AND FOURTH CAUSES OF ACTION:**

22      1.    For attorneys' fees and expenses, and costs incurred to obtain the benefits

23           to which Plaintiff is entitled under the Landmark Policy or the Nautilus Policy;

24      2.    For such other and further relief as the Court may deem just and proper.

25  **ON THE FIFTH CAUSE OF ACTION:**

26      1.    For a judicial determination as to which policy -- the Landmark Policy or

27           Nautilus Policy -- provides primary coverage to MPC for the Receiver,

28           Shechter, and Applebaum actions;

2. For a judicial declaration that Westchester must provide follow form excess coverage over whichever policy the Court declares applies.

3. For a judicial declaration that plaintiffs in the Receiver, Shechter, and Applebaum, who have been named as defendants herein, be bound to the Court's determination.

4. For recovery of its costs of suit herein; and

5. For such other and further relief as the Court may deem just and proper.

Dated: January 14, 2022          HESS, BOWER ADAMS-HESS, PC

By: _____
Randy M. Hess, Esq.
Nicole S. Adams-Hess, Esq.
Attorneys for Plaintiff

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all claims and causes of action alleged herein.

Dated: January 14, 2022          Respectfully submitted,

HESS, BOWER ADAMS-HESS, PC

By: _____
Randy M. Hess, Esq.
Nicole S. Adams-Hess, Esq.
Attorneys for Plaintiff

# EXHIBIT A

# Nautilus Insurance Company

**Declarations Page**

## Miscellaneous Professional Liability Insurance

CLAIMS MADE NOTICE FOR DECLARATIONS: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE COMPANY DURING THE POLICY IN ACCORDANCE WITH SECTION V. A. OF THIS POLICY.

PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

Whenever printed in this Declarations Page, the boldface type terms shall have the same meanings as indicated in the **Policy**.

Policy Number: MPL 1468418-P1

**Item 1.** Name and Address of **Named Insured**:

Mills, Potoczak & Company
27600 Chagrin Boulevard
Cleveland, OH 44122

Person designated to receive all correspondence from the **Company**:

William M. Potoczak, President

**Item 2.** **Policy Period:** From 01/21/2016 (inception date) to 01/21/2017 (expiration date)
*(Both dates at 12:01 a.m. Standard Time at the address of the Named Insured)*

**Item 3.** Limits of Liability for the **Policy Period**:
A. $5,000,000 each **Claim,** but in no event exceeding
B. $5,000,000 in the aggregate for all **Claims**

**Item 4.** Deductible: $50,000 each and every **Claim**

**Item 5.** **Retroactive Date**: 01/21/1990

**Item 6.** **Professional Services**: Escrow, policy certification, premium payment, life tracking, death claims and trust services performed in connection with life settlements.

**Item 7.** Premium: $55,000

**Item 8.** Policy Form: MPL 7000-0915-N
Endorsements:
MPL 00001-00-0915 Important Notice To Policyholders
MPL SS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 Service of Suit
MPL 200903-00 0915 Security and Privacy Offense Coverage
MPL 103001-70-0915 Amended Settlement Provision
MPL 306101-70-0915 Amend Damages to Include Punitive Damages
MPL 308901-00-0915 Addition of Independent Contractors as Insureds
MPL 401102-70-0915 Exclusion IV. A. Amended Claim Expenses Covered
MPL 400906-00-0915 Specific Claim or Incident Exclusion
MPL 000999-00-0915 Policy Amendment Endorsement

Notice to the **Company** as provided in section V. A. shall be sent to:

Monitor Liability Managers, Claims Department
233 South Wacker Drive, Suite 3900; Chicago, IL 60606
Toll Free: (844) 465-6256   Fax:   (312) 207-1933
Email:   newclaim@monitorliability.com

All other notices required to be given to the **Company** under this **Policy** shall be sent to:

Monitor Liability Managers
233 South Wacker Drive, Suite 3900; Chicago, IL 60606
Toll Free: (800) 446-2100

These Declarations along with the completed and signed Application and the Miscellaneous Professional Liability Insurance **Policy** shall constitute the contract between the **Named Insured** and the Company.

Authorized Representative:

Date Issued:   01/27/2016

MPL 7001 (09-15)-N

Page 1 of 1

## Nautilus Insurance Company

# Miscellaneous Professional Liability Insurance Policy

### CLAIMS MADE NOTICE FOR POLICY

**NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE COMPANY IN ACCORDANCE WITH SECTION V. A. OF THIS POLICY.**

**PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the payment of the premium, in reliance on all statements in the **Application** and all other information provided to the **Company**, and subject to all provisions of this **Policy**, the **Company** and **Insureds** agree as follows:

## I. Insuring Agreement

### A. Professional Liability Insurance Coverage

The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the Deductible, up to the Limit of Liability, that the **Insured** shall become legally obligated to pay as **Damages** and **Claim Expenses** arising from a **Claim** that is both first made against the **Insured** and reported in writing to the **Company** in accordance with Section V. A. of this **Policy**, for any actual or alleged **Wrongful Act**, provided that:

1. no **Insured** gave notice to a **Prior Insurer** of such **Claim** or a **Related Claim**; and

2. no **Insured** gave notice to a **Prior Insurer** of any such **Wrongful Act** or **Related Wrongful Act**; and

3. prior to the date an **Insured** first becomes an **Insured** under this **Policy**, or became an **Insured** under the first policy issued to the **Named Insured** by the **Company** (or its subsidiary or affiliated insurers), and such insurance coverage has been continuously maintained with the **Company** (or its subsidiary or affiliated insurers) until the effective date of this **Policy**, whichever is earlier, no **Insured** had a basis to believe that any **Wrongful Act**, or **Related Wrongful Act**, might reasonably be expected to be the basis of a **Claim**; and

4. such **Wrongful Act** happened on or after the **Retroactive Date** and before the end of the **Policy Period**.

### B. Defense

The **Company** shall have the right and duty to defend, in the **Insured's** name and on the **Insured's** behalf, a **Claim** seeking **Damages** covered by this **Policy** even if any of the allegations of the **Claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **Claim** as is deemed necessary by the **Company**. If a **Claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

### C. Settlement

The **Company** may investigate and solicit settlement offers for any **Claim**; however, the **Company** shall not settle any **Claim** without the **Named Insured's** written consent. If, however, the **Named Insured** refuses to consent to any settlement recommended by the **Company**, which is acceptable to the claimant, and shall elect to contest the **Claim**, or continue any legal, administrative, or arbitration proceedings in connection with such **Claim**, then the **Company's** liability for the **Claim** shall not exceed the amount for which the **Claim** could have been settled, including **Claim Expenses** incurred up to the date of such refusal. Such amounts are subject to the provisions of Section II. of this **Policy**. In the event that the **Named Insured** refuses to consent to any settlement recommended by the **Company**, which is acceptable to the claimant, the **Company's** right and duty to defend such **Claim** shall end upon the date of such refusal.

### D. Exhaustion of Limit

The **Company** is not obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle a **Claim** after the applicable limit of the **Company's** liability has been exhausted by payment of **Damages** and / or **Claim Expenses** or after the **Company** has deposited the remaining available Limit of Liability into a court of competent jurisdiction. In such case, the **Company** shall have the right to withdraw from the further investigation, defense, payment or settlement of such **Claim** by tendering control of such investigation, defense or settlement of the **Claim** to the **Insured**.

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

**NAUTILUS INSURANCE COMPANY**

E.   **Allocation**

If a **Claim** made against an **Insured** contains both covered and uncovered matters, then the **Named Insured** and the **Company** will allocate any amount incurred with respect to such **Claim** as follows:

1.   One hundred percent (100 %) of **Claim Expenses** incurred will be covered; and

2.   **Damages** will be allocated on the basis of the relative legal and financial exposures of the parties to covered and uncovered matters pursuant to the terms of this **Policy**.

If a **Claim** made against an **Insured** contains both covered and uncovered parties, then the **Named Insured** and the **Company** will allocate any amounts incurred on behalf of any uncovered parties with respect to such **Claim** on the basis of the relative legal and financial exposures of the parties of such covered and uncovered parties pursuant to the terms of this **Policy**.

The **Company** shall not be liable under this **Policy** for the portion of such amount allocated to non-covered **Damages** and / or **Claim Expenses**. In the event that the parties cannot reach a mutually agreeable allocation, the **Company** will determine the appropriate allocation at its discretion. Any dispute arising out of the allocation of **Damages** and / or **Claim Expenses** shall be subject to the Alternative Dispute Resolution process set forth in Section V. F. of this **Policy**.

## II. Limits of Liability and Deductible

A.   **Limits of Liability**

1.   The Limit of Liability stated in Item 3. A. of the Declarations is the **Company's** Limit of Liability for all **Damages** and **Claim Expenses** arising out of each **Claim** first made against the **Insured** and reported to the **Company** in accordance with Section V. A. of this **Policy**.

2.   The Limit of Liability stated in Item 3. B. of the Declarations is the **Company's** maximum aggregate Limit of Liability for all **Damages** and **Claim Expenses** arising out of all **Claims** first made against the **Insured** and reported to the **Company** in accordance with Section V. A. of this **Policy**, regardless of the number of **Insureds**, **Claims** made, or persons or entities bringing such **Claims**.

3.   **Claim Expenses** shall be part of and not in addition to the Limit of Liability and payment of **Claim Expenses** by the **Company** will reduce, and may exhaust, the Limit of Liability stated in Item 3. of the Declarations.

B.   **Deductible**

1.   The Deductible amount stated in Item 4. of the Declarations shall apply to each and every **Claim** first made and reported to the **Company** in accordance with Section V. A. of this **Policy**. The Deductible shall be paid by the **Named Insured**, or upon the **Named Insured's** failure to pay, jointly and severally by all **Insureds** against whom the **Claim** is made.

2.   The **Company** shall only be liable for the amount of **Damages** and / or **Claim Expenses** arising from a **Claim** which is in excess of the Deductible amount stated in Item 4. of the Declarations.

3.   The **Company** has the right, but not the obligation, to advance any **Damages** and / or **Claim Expenses** within the Deductible. Any funds advanced by the **Company** shall serve to reduce the Limits of Liability. If the **Company** brings suit to collect the Deductible, then the **Insureds** responsible to pay the Deductible also shall pay the legal fees, costs and expenses incurred by the **Company** to collect the Deductible.

C.   **Multiple Insureds, Claims and Claimants**

Subject to the provisions of this **Policy**, the Limit of Liability stated in Item 3. of the Declarations is the maximum amount the **Company** will pay as **Damages** and **Claim Expenses** regardless of the number of **Insureds**, **Claims** made or persons or entities making **Claims**. If **Related Claims** are subsequently made against the **Insured** and reported to the **Company** in accordance with Section V. A. of this **Policy**, all such **Related Claims**, whenever made, shall be considered a single **Claim** first made and reported to the **Company** within the **Policy Period** in which the earliest of the **Related Claims** was first made and reported to the **Company**.

## III. Definitions

Whenever printed in boldface type, and whether in the singular or plural form in this **Policy**, the following terms shall have the meanings indicated below.

A.   **Application** means all signed applications, including any attachments, and all other materials and information provided by or on behalf of the **Insured** to the **Company** for the purpose of underwriting or issuing this **Policy**, or any policy of insurance of which this **Policy** is a renewal or replacement.

B.   **Bodily Injury** means: injury to the body, sickness or disease sustained by any person, including death resulting from such injuries; or mental injury, mental anguish, mental tension, emotional distress, pain or suffering or shock sustained by any person, whether or not resulting from injury to the body, sickness, disease or death of any person.

MPL 7000 (09-15)                                                                                                 Page 2 of 9

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

**NAUTILUS INSURANCE COMPANY**

C. **Claim** means a demand for money, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** arising out of any **Wrongful Act**.

D. **Claim Expenses** means:

1. fees charged by attorneys designated by the **Company** or by the **Insured** with the **Company's** written consent;

2. all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim** if incurred by the **Company**, or by the **Insured** with the written consent of the **Company**, including but not limited to, premiums for any appeal bond, attachment bond or similar bond, but without any obligation of the **Company** to apply for or furnish any such bond;

3. all interest on the entire amount of any judgment which accrues after entry of the judgment and before the **Company** has paid that part of the judgment which does not exceed the Limit of Liability stated in Item 3. A. of the Declarations for each **Claim**.

**Claim Expense** with respect to a covered **Claim** will be paid first and such payment will reduce the amount available to pay **Damages**. **Claim Expenses** do not include fees, costs or expenses of employees or officers of the **Company**. Nor shall **Claim Expenses** include salaries, loss of earnings or other remuneration by or to any **Insured**.

E. **Company** means the entity issuing this **Policy** as listed on the Declarations Page.

F. **Damages** means judgments, awards and settlements (including pre-judgment interest), provided all settlements are negotiated with the assistance and approval of the **Company**. **Damages** do not include:

1. fees, costs and expenses paid or incurred or charged by any **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

2. civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule;

3. injunctive or declaratory relief;

4. any amount for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order;

5. punitive or exemplary damages and the multiple portions thereof; or

6. costs to comply with any injunctive relief.

G. **Extended Reporting Period** means the period of time after the end of the **Policy Period** for reporting a **Claim** that is first made against the **Insured** and arises from a **Wrongful Act** that fully occurred prior to the end of the **Policy Period**, and which is otherwise covered by this **Policy**.

H. **Insured** means the **Named Insured**, any **Subsidiary** and any **Insured Person**.

I. **Insured Person** means:

1. any past or present natural person in their capacity as a partner, principal, officer, director, shareholder, manager, member, or employee of the **Named Insured** or any **Subsidiary** but only for **Professional Services** performed on behalf of and for clients of the **Named Insured** or any **Subsidiary**;

2. the estate, heirs, executors, administrators, assigns, and legal representatives of an **Insured Person** in the event of such **Insured Person's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured Person** would have been provided coverage under this **Policy**; or

3. the spouse or domestic partner of an **Insured Person**; provided, however, coverage is only afforded to such spouse or domestic partner for a **Claim** arising solely out of their status as such and where such **Claim** seeks damages from marital community property, jointly held property or property transferred from an **Insured Person** to the spouse or domestic partner. No coverage is provided for any **Wrongful Act** of an estate, heir, legal representative, assign, spouse or domestic partner.

J. **Named Insured** means the entity designated in Item 1. of the Declarations.

K. **Personal Injury** means an injury arising out of: false arrest, detention, or imprisonment; wrongful entry, or eviction, or other invasion of the right of private occupancy; libel, slander, or other disparaging or defamatory materials; a writing or saying in violation of an individual's right to privacy; malicious prosecution or abuse of process.

L. **Policy** means, collectively, the Declarations, the **Application**, this policy form and all written endorsements issued to form part of this policy form.

M. **Policy Period** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of cancellation of this **Policy**.

N. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, nuclear material and nuclear waste. Waste and nuclear waste includes materials to be recycled, reconditioned or reclaimed.

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

**NAUTILUS INSURANCE COMPANY**

O. **Prior Insurer** means an insurer, including the **Company** and any subsidiary or affiliate of the **Company**, who has issued a professional liability insurance policy that is applicable to a **Claim**, such policy having an inception date prior to the **Policy Period**.

P. **Professional Services** means only those services specified in Item 6. of the Declarations which are performed for clients of the **Named Insured** or a **Subsidiary** for a fee.

Q. **Property Damage** means damage to, or destruction of, any tangible property, including the loss of use of that property.

R. **Related Claims** means all **Claims** arising out of a single **Wrongful Act**, or arising out of **Related Wrongful Acts** in the performance of **Professional Services**.

S. **Related Party** means any entity other than the **Named Insured** or any **Subsidiary**:

1. in which any **Insured** is a trustee, principal, managing partner, managing member, director, officer or employee at the time the **Wrongful Act** is committed;

2. in which any **Insured** or members of the immediate family of any **Insured** directly or indirectly owns or controls more than ten percent (10%) of the issued and outstanding shares, units or other portions of the capital of such entity at the time the **Wrongful Act** is committed;

3. which owns, manages or controls any **Insured** at the time the **Wrongful Act** is committed; or

4. under common ownership, management or control with any **Insured** at the time the **Wrongful Act** is committed.

T. **Related Wrongful Acts** means all **Wrongful Acts** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

U. **Retroactive Date** means the date set forth in Item 5. of the Declarations.

V. **Subsidiary** means:

1. an entity in which the **Named Insured** owns more than a fifty percent (50%) interest, either directly or indirectly through one or more of its **Subsidiaries**; and such entity was listed as a **Subsidiary** in the most recent **Application** provided to the **Company**; and such **Subsidiary** was not otherwise specifically excluded by endorsement to this **Policy**; or

2. an entity that an **Insured** forms or acquires during the **Policy Period**, subject to the terms of Section V. Q. of this **Policy**.

In all events, coverage as is afforded with respect to a **Claim** made against a **Subsidiary** shall only apply for **Wrongful Acts** committed or allegedly committed while the entity meets the criteria set forth in sub-paragraphs 1 or 2 above. An entity ceases to be a **Subsidiary** when the **Named Insured** ceases to own more than fifty percent (50%) of the issued and outstanding voting interest either directly or indirectly through one or more of its **Subsidiaries**.

W. **Wrongful Act** means any actual or alleged act, error or omission committed by any **Insured** or by any person whose act, error or omission the **Insured** is legally responsible, arising solely from the performance of, or failure to perform, **Professional Services**, including **Personal Injury** solely in the course of, and arising from, the performance of, or failure to perform, **Professional Services**.

## IV. Exclusions

This **Policy** does not apply to any **Claim Expenses** or **Damages** in connection with any **Claim**:

A. based on, or arising out of, or in any way involving any actual or alleged dishonest, fraudulent, criminal, or malicious act, error, omission, or intentional wrongdoing by an **Insured**. Criminal proceedings are not covered under this **Policy** regardless of the allegations made against any **Insured**;

B. based on, or arising out of, or in any way involving any actual or alleged:

1. **Property Damage**; or

2. **Bodily Injury**; provided, however, sub-paragraph 2. of this exclusion does not apply to any **Claim** seeking **Damages** for: mental injury, mental anguish, mental tension, emotional distress, pain or suffering or shock sustained by any person; and arising out of a **Wrongful Act**;

C. based on, or arising out of, or in any way involving an **Insured's** alleged liability under any oral or written contract or agreement, unless such liability would have attached to any **Insured** in the absence of such agreement;

D. brought by or on behalf of an **Insured** or any **Related Party**;

E. based on, or arising out of, or in any way involving any actual or alleged **Professional Services** performed for or by any entity if at the time the **Wrongful Act** is committed such entity was a **Related Party**;

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

**NAUTILUS INSURANCE COMPANY**

F.  based on, or arising out of, or in any way involving the actual or alleged purchase, sale or offer or solicitation of any offer to purchase or sell securities, including but not limited to, any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any state "Blue Sky" securities law, any similar state statutes, rules, regulations or common law regulating securities similar to the foregoing; including amendments thereto, and any similar federal, state, local or common law, including any rules and regulations promulgated thereunder;

G.  based on, or arising out of, or in any way involving any **Insured** having gained, in fact, any personal profit or advantage to which he or she was not legally entitled;

H.  based on, or arising out of, or in any way involving any actual or alleged obligations for which any **Insured** may be liable under any workers' compensation, unemployment compensation, disability or pension benefits law, or any similar federal, state, local or common law, including but not limited to any actual or alleged violations of the Employee Retirement Income Security Act of 1974, including amendments thereto;

I.  based on, or arising out of, or in any way involving any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act, 18 USC Sections 1961 et seq., including amendments thereto, and any similar federal, state, local or common law, including any rules or regulations promulgated thereunder;

J.  based on, or arising out of, or in any way involving any actual or alleged unfair competition, anti-trust law violation or any agreement or conspiracy to restrain trade;

K.  seeking the return or reimbursement of fees, costs or expenses paid to the **Insured**;

L.  based on, or arising out of, or in any way involving any actual or alleged employment related act, error or omission, or any discrimination on any basis as defined by federal, state or local statute, regulation, law or ordinance;

M.  based on, or arising out of, or in any way involving the **Insured's** insolvency, receivership, bankruptcy, liquidation or the financial ability to pay;

N.  based on, or arising out of, or in any way involving the **Insured's** actual or alleged unauthorized use of confidential, privileged or non-public material or information for any purpose whatsoever;

O.  based on, or arising out of, or in any way involving any actual or alleged misappropriation or theft of trade secrets;

P.  based on, or arising out of, or in any way involving any actual or alleged infringement of patent, copyright, trademark, trade dress or infringement of any other intellectual property right held by a third party;

Q.  based on, or arising out of, or in any way involving any actual or alleged breach of security, unauthorized access or use of, or tampering with data or systems;

R.  based on, or arising out of, or in any way involving the failure to effect or maintain any insurance or bond;

S.  based on, or arising out of, or in any way involving the actual or alleged conversion, misappropriation or improper commingling of client funds by an **Insured**;

T.  based on, or arising out of, or in any way involving, whether suddenly or over a long period of time:

1.  the actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of **Pollutants**; or

2.  any actual or alleged injury, damage, payments, costs or expense incurred as a result of any testing for, monitoring, removal, containment, treatment, detoxification, neutralization or cleanup of **Pollutants**.

## V. Policy Conditions

### A. Notice of Claim or Potential Claim

#### 1. Notifying the Company of a Claim

As a condition precedent to the obligations of the **Company** under this **Policy**, an **Insured** shall give the **Company** written notice of a **Claim** first made against the Insureds during the **Policy Period**, as soon as practicable, but in no event later than sixty (60) days after the expiration of the **Policy Period**.

#### 2. Notifying the Company of a Potential Claim

If during the **Policy Period** the **Insured** becomes aware of any **Wrongful Act** that may reasonably be expected to be the basis of a **Claim** against any **Insured** and gives written notice to the **Company** of such **Wrongful Act** and the reasons for anticipating a **Claim** with full particulars, including but not limited to:

a.  the specific **Wrongful Act**;

b.  the dates and persons involved;

c.  the identity of anticipated or possible claimants; and

d.  the circumstances by which the **Insured** first became aware of the possible **Claim**;

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

**NAUTILUS INSURANCE COMPANY**

then any such **Claim** that arises out of such reported **Wrongful Act** and that is subsequently made against the **Insured** and reported to the **Company** shall be deemed to have been made at the time such written notice was given to the **Company**.

### B. Reimbursement of the Company

Subject to the **Insured's** right to consent to settlement as set forth in Section I. C. of this **Policy**, if the **Company**, in the exercise of its discretion and without any obligation to do so, pays any amount within the amount of the Deductible then such amounts shall, upon written demand by the **Company**, be paid by the **Named Insured** within thirty (30) days. If the **Named Insured** fails to pay the Deductible, then all the **Insureds** shall be jointly and severally obligated to pay the Deductible. Any funds advanced by the **Company**, at its option, shall serve to reduce the Limit of Liability. If the **Company** brings suit to collect the Deductible, then the **Insureds** responsible to pay the Deductible also shall pay the legal fees, costs and expenses incurred by the **Company** to collect the Deductible.

### C. Territory

This **Policy** applies to any **Wrongful Act** taking place anywhere in the world, provided that the **Claim** is made and suit is brought against the **Insured** within the United States of America, including its territories, possessions, Puerto Rico or Canada.

### D. Other Insurance

Any **Claim** insured under any other insurance policy or risk transfer instrument which applies to a covered **Claim**, shall be paid first by those instruments, policies or other arrangements. This **Policy** will not serve as primary insurance where there is other applicable insurance. It is the intent of this **Policy** to apply only to **Claim Expenses** and / or **Damages** which are more than the total limit of all deductibles, limits of liability, self-insured amounts or other valid and collectible insurance or risk transfer arrangements, whether primary, contributory, excess, contingent, or otherwise. This **Policy** will not contribute with any other applicable insurance.

### E. Assistance and Cooperation of the Insured

1. The **Insured** shall cooperate with the **Company** and, upon the **Company's** request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving of evidence, obtaining the attendance of witnesses, and the conduct of suits and proceedings in connection with a **Claim**.

2. The **Insured** shall assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **Claim**.

3. The **Insured** shall not, except at its own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the written consent of the **Company**.

### F. Alternative Dispute Resolution Process

It is hereby understood and agreed that all disputes or differences which may arise under, or in connection with, this **Policy** that cannot be resolved by and between the **Company** and any **Insured**, whether arising before or after termination of this **Policy** (including but not limited to, the breach, termination or invalidity of this **Policy**, or any determination of the amount of **Claim Expenses** and / or **Damages**), must first be submitted to the non-binding mediation process set forth in this Section V. F. The non-binding mediation will proceed in any manner mutually agreed by and between the **Company** and the **Insured**, in which all implicated **Insureds** and the **Company** shall try in good faith to settle the dispute by mediation. If the **Company** and the **Insured** cannot agree on the process of the mediation, it shall proceed in accordance with the American Arbitration Association's ("AAA") then-prevailing Commercial Mediation Rules. The parties shall mutually agree on the selection of a mediator versed in the legal and/or insurance issues relevant to the matter(s) in dispute.

In the event that such non-binding mediation does not result in a settlement of the subject dispute, either party shall have the right, with all other parties' consent, to commence an arbitration proceeding with the AAA that will be submitted to an arbitration panel of three arbitrators selected as follows: (i) the **Insured** will select one arbitrator; (ii) the **Company** will select one arbitrator; and (iii) said arbitrators shall mutually agree upon the selection of the third arbitrator. The arbitration shall be conducted in accordance with the AAA's then-prevailing Commercial Arbitration Rules. In the event of arbitration, the decision of the arbitrators shall be final and binding to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs.

Notwithstanding the foregoing, no arbitration proceeding shall be commenced until at least ninety (90) days after the date of the non-binding mediation shall be deemed concluded or terminated by the mediator. Each party shall share equally the expenses of the non-binding mediation and arbitration.

The non-binding mediation may be commenced in Chicago, Illinois, or in the state indicated in Item 1. of the Declarations as the mailing address for the **Named Insured**.

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

**NAUTILUS INSURANCE COMPANY**

### G. Action Against the Company

No action shall lie against the **Company** by any third party, unless, as a condition precedent thereto:

1. there shall have been full compliance with all the terms of this **Policy**; and

2. the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Company**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this **Policy** to the extent of the insurance afforded by this **Policy**. No person or organization shall have any right under this **Policy** to join the **Company** as a party to any action against an **Insured**, nor shall the **Company** be impleaded by the **Insured** or his legal representative.

### H. Bankruptcy or Insolvency

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the **Company** of any of its obligations under this **Policy** nor deprive the **Company** of its rights or defenses under this **Policy**.

### I. Subrogation

In the event of any payment under this **Policy**, the **Company** shall be subrogated to all the **Insured's** rights of recovery thereof against any person or organization. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure and collect upon such rights. The **Insured** shall do nothing to prejudice such rights.

### J. Changes

Notice to any of the **Company's** agents or knowledge possessed by any such agent or any other person shall not act as a waiver or change in any part of this **Policy**. It also will not prevent the **Company** from asserting any rights under the provisions of this **Policy**. None of the provisions of this **Policy** will be waived, changed or modified except by written endorsement, issued to form a part of this **Policy**.

### K. Assignment

No assignment of interest of the **Insured** under this **Policy** shall be valid without the written consent of the **Company**.

### L. Cancellation/ Nonrenewal

1. The **Named Insured** may cancel this **Policy** by written notice to the **Company** stating at what future date cancellation is to be effective.

2. The **Company** may cancel or non-renew this **Policy** by written notice to the **Named Insured** at the address last known to the **Company**. The **Company** will provide written notice at least sixty (60) days before cancellation or non-renewal is to be effective. If the **Company** cancels this **Policy** because the **Insured** has failed to pay a premium when due or has failed to pay amounts in excess of the limit of the **Company's** liability, or within the amount of the Deductible, this **Policy** may be canceled by the **Company** by mailing to the **Named Insured** written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The time of surrender of this **Policy** or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**.

3. If the **Company** cancels this **Policy**, the earned premium shall be computed pro rata. If the **Named Insured** cancels this **Policy**, the **Company** shall retain the greater of the customary short rate proportion of the premium or twenty five percent (25%) of the premium stated in Item 7. of the Declarations. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4. The offering of terms and conditions different from the expiring terms and conditions shall not constitute a refusal to renew.

### M. Entire Contract

By acceptance of this **Policy** the **Insured** agrees that:

1. all of the information and statements provided to the **Company** by the **Insured** are true, accurate and complete and shall be deemed to constitute material representations made by all of the **Insureds**; and

2. this **Policy** is issued in reliance upon the **Insured's** representations; and

3. this **Policy**, together with the **Application** (all of which is deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

**NAUTILUS INSURANCE COMPANY**

4. any material misrepresentation or fraud made by the **Insured** or with the **Insured's** knowledge in applying for this **Policy** or in pursuing a **Claim** under this **Policy**, shall be deemed grounds for denial of coverage or cancellation of this **Policy**.

## N. Named Insured as Sole Agent

The **Named Insured** shall be the sole agent of all **Insureds** hereunder for the purpose of: effecting or accepting any notices hereunder, any amendments to or cancellation of this **Policy**; completing of any applications and the making of any statements, representations and warranties; the payment of any premium and the receipt of any return premium that may become due under this **Policy**; and the exercising or declining to exercise any right under this **Policy**.

## O. Notices

Any notices required to be given by an **Insured** shall be submitted in writing to the **Company** at the address stated in the Declarations or in writing to the authorized representative of the **Company**. If mailed, the date of mailing of such notice shall be deemed to be the date such notice was given and proof of mailing shall be sufficient proof of notice.

## P. Trade and Economic Sanctions

This **Policy** does not provide coverage for **Insureds**, transactions or that part of **Damages** or **Claim Expenses** that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

## Q. Changes to the Named Insured

If during the **Policy Period** the **Named Insured**:

1. forms or acquires a **Subsidiary** then there shall be no coverage under this **Policy** for the newly formed or acquired **Subsidiary** unless: (a) the **Named Insured** provides the **Company** written notice within thirty (30) days of such formation or acquisition; and (b) the **Company**, in its sole discretion, agrees in writing to insure such newly formed or acquired entity; and (c) the **Named Insured** pays any additional premium charged by the **Company** and has agreed to any coverage amendment required by the **Company**, or

2. merges with an entity such that the **Named Insured** remains an ongoing entity then there shall be no coverage under this **Policy** for the newly merged entity unless: (a) the **Named Insured** provides the **Company** written notice within thirty (30) days of such merger; and (b) the **Company**, in its sole discretion, agrees in writing to insure such newly merged entity; and (c) the **Named Insured** pays any additional premium charged by the **Company** and has agreed to any coverage amendment required by the **Company**.

## R. Policy Headings

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

# VI. Extended Reporting Periods

## A. Dissolution

1. If the **Named Insured** ceases to continue as an ongoing entity or its assets are sold (as used herein "Dissolution"), then this **Policy** shall continue in full force and effect until the expiration date stated in Item 2. of the Declarations as to any **Wrongful Act** fully occurring prior to the effective date of the Dissolution. There shall be no coverage afforded by any provision of this **Policy** for any **Wrongful Acts** occurring after the effective date of the Dissolution.

2. At the expiration of the **Policy Period**, the **Insured** may purchase an optional **Extended Reporting Period** pursuant to Section VI. C. of this **Policy**.

## B. Automatic Extended Reporting Period

1. If this **Policy** is canceled or non-renewed by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, non-cancelable 60 day **Extended Reporting Period** starting at the termination of the **Policy Period** only if there is no other policy or policies that would otherwise provide insurance for such **Wrongful Act**, error or omission. This automatic **Extended Reporting Period** will terminate after 60 days.

2. The **Company's** liability for all **Claims** reported during the automatic **Extended Reporting Period** shall be part of and not in addition to the Limit of Liability for the **Policy Period** as set forth in the Declarations and section II. Limit of Liability and Deductible.

**NAUTILUS INSURANCE COMPANY**

### C. Optional Extended Reporting Period

1. If the **Named Insured** or the **Company** cancels or non-renews this **Policy**, then the **Named Insured** shall have the right, upon payment of the appropriate percentage of the "full annual premium", as provided in Section VI. C. sub-paragraph 2. of this **Policy**, to an extension of the coverage granted by this **Policy** with respect to any **Claim** first made and reported in writing to the **Company** during the appropriate period of months after the date upon which the **Policy Period** ends, but only with respect to a **Wrongful Act** that occurred prior to the end of the **Policy Period** and is otherwise covered by this **Policy**. Such appropriate period of months shall be referred to as the optional **Extended Reporting Period**. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the **Policy Period**. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **Policy Period** by providing: a) written notice to the **Company**; and b) with the written notice, the amount of additional premium described below.

2. The percentage of the "full annual premium" and period of months for the optional **Extended Reporting Period** shall be:

   a. 12 months optional **Extended Reporting Period** for 100 percent of the "full annual premium" of this **Policy**, or

   b. 24 months optional **Extended Reporting Period** for 175 percent of the "full annual premium" of this **Policy**, or

   c. 36 months optional **Extended Reporting Period** for 200 percent of the "full annual premium" of this **Policy**.

3. The premium for the optional **Extended Reporting Period** is due on its effective date. This optional **Extended Reporting Period** is non-cancelable and the entire premium shall be deemed fully earned at its commencement without any obligation by the **Company** to return any portion thereof.

4. The **Company's** liability for all **Claims** reported during the optional **Extended Reporting Period** shall be part of and not in addition to the Limit of Liability for the **Policy Period** as set forth in the Declarations and Section II. of this **Policy**.

### D. Elimination of Right to any Extended Reporting Period

There is no right to any **Extended Reporting Period**:

1. if the **Company** shall cancel or refuse to renew this **Policy** due to:

   a. non-payment of premiums;

   b. non-compliance by an **Insured** with any of the terms and conditions of this **Policy**; or

   c. any misrepresentation or omission in the **Application** for this **Policy**;

2. if during the **Policy Period** such **Insured's** license, right to practice or right to conduct business is revoked, suspended or surrendered at the request of any regulatory authority.

### E. Extended Reporting Period is Not a New Policy

It is understood and agreed that any applicable **Extended Reporting Period** shall not be construed to be a new policy of insurance and any **Claim** submitted during such period shall otherwise be governed by this **Policy**.

In witness whereof, the **Company** has caused this **Policy** to be signed by its President and Chief Executive Officer and Secretary, but this **Policy** shall not be valid unless countersigned on the Declarations Page by a duly authorized representative of the **Company**.

*President and Chief Executive Officer*                    Secretary

MPL 7000  (09-15)
The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

# NAUTILUS INSURANCE COMPANY

## IMPORTANT NOTICE TO POLICYHOLDERS

- The insurance policy you have purchased is being issued by an insurer that is not licensed by your state. These companies are called "Non-Admitted" or "Surplus Lines" Insurance Companies.

- The Insurance Company is not subject to the financial solvency regulation and enforcement which applies to licensed insurers.

- The Insurance Company does not participate in any of the Insurance Guaranty Funds that may exist in your state. Therefore, these Funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.

- Your State Insurance Department maintains a list of eligible Surplus Lines Insurance Companies approved by the Insurance Commissioner. Ask your agent or broker if the insurer is on that list.

- For additional information about the insurer, you should ask questions of your insurance agent, broker for "Surplus Lines" broker or contact your state Insurance Department.

- If you, as the applicant, required that the insurance policy you have purchased be bound immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this **Policy** within five days of receiving this disclosure. If you cancel coverage during that five-day period, the premium will be prorated and any broker fee charged for this insurance will be returned to you.


ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.


Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
All other provisions of the Policy remain unchanged.

| Insured:<br>Mills, Potoczak & Company | Policy Number:<br>MPL 1468418-P1 |
|---|---|
| Effective Date of This Endorsement:<br>01/21/2016 | Authorized Representative: |

MPL 00001-00-0915

# NAUTILUS INSURANCE COMPANY

## SERVICE OF SUIT

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, "suit" or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

It is further agreed that service of process in such "suit" may be made upon Todd Hampton, or his nominee of the **Company** at 233 South Wacker Drive – Suite 3900, Chicago, Illinois 60606 and that in any "suit" instituted against any one of them upon this **Policy**, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

It is agreed that in any state requiring a standard form of policy, insurance hereunder on values or properties in such state shall attach and cover in accordance with the terms and conditions of such standard form.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
All other provisions of the Policy remain unchanged.

| Insured: | Policy Number: |
|---|---|
| Mills, Potoczak & Company | MPL 1468418-P1 |
| Effective Date of This Endorsement: | Authorized Representative: |
| 01/21/2016 | |

MPL SS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

# NAUTILUS INSURANCE COMPANY

## Security and Privacy Offense Coverage

In consideration of the premium paid for this **Policy**:

1. Section III. Definitions of this **Policy** is amended by the addition of the following:

    a. **Computer Virus** means any malicious code which could destroy, alter, contaminate, or degrade the integrity, quality, or performance of data of any computer application software, computer network, or computer operating system or related network, upon the introduction of such malicious code through any computer, communications equipment, or communications network that is owned or operated by the **Named Insured.**

    b. **Security and Privacy Offense** means:

        1. failure by the **Insured** to prevent the transmission of a **Computer Virus**;

        2. failure by the **Insured** to provide any authorized user of the **Named Insured's** website, or the Named Insured's computer or communications network, with access to such website, or communications network; or

        3. failure by the **Insured** to provide notification of any actual or potential unauthorized access to, or use of, data containing private or confidential information of others if such notification is required by any state or federal regulation or statute.

2. Section III. Definitions W. **Wrongful Act** of this **Policy** is amended by the addition of the following:

    W. **Wrongful Act** also means any actual or alleged act, error or omission committed by any **Insured** or by any person whose act, error or omission the **Insured** is legally responsible, resulting in a **Security and Privacy Offense**, provided such act, error or omission arises solely from the performance of, or failure to perform, **Professional Services**, including **Personal Injury**, solely in the course of, and arising from, the performance of, or failure to perform, **Professional Services**.

3. Solely with respect to the coverage provided by this endorsement for a **Security and Privacy Offense**, section IV. Exclusions of this **Policy** is amended by the addition of the following:

    IV. This **Policy** does not apply to any **Claim Expenses** or **Damages** in connection with any **Claim**:

    a. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any electronic funds transfer or similar transaction by an **Insured** or on an **Insured's** behalf, which is lost, diminished or damaged during transfer from, into or between an **Insured's** accounts;

    b. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

        1. any express or implied warranty, or

        2. any alleged failure of goods, products, or services to conform with any advertised standards of quality or performance, or

        3. any intentional violation of a the **Insured's** privacy policy by any **Insured**, or

        4. an **Insured's** alleged failure to take reasonable steps to maintain and upgrade the **Insured's** security.

4. Section IV. Exclusions Q. of this **Policy** is deleted in its entirety.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
All other provisions of the Policy remain unchanged.

| Insured: | Policy Number: |
|---|---|
| Mills, Potoczak & Company | MPL 1468418-P1 |
| Effective Date of This Endorsement: | Authorized Representative: |
| 01/21/2016 | |

MPL 200903-00 0915

**NAUTILUS INSURANCE COMPANY**

## Amended Settlement Provision

In consideration of the premium paid for this **Policy,** Section I. C. Settlement of this **Policy** is deleted in its entirety and replaced with the following:

**C. Settlement**

The **Company** may investigate and solicit settlement offers for any **Claim**; however, the **Company** shall not settle any **Claim** without the **Named Insured's** written consent. If, however, the **Named Insured** refuses to consent to any settlement recommended by the **Company,** which is acceptable to the claimant, and shall elect to contest the **Claim,** or continue any legal, administrative, or arbitration proceedings in connection with such **Claim,** then the **Company's** liability for the **Claim** shall not exceed the amount for which the **Claim** could have been settled, including **Claim Expenses** incurred up to the date of such refusal plus twenty five percent (25%) of any **Claim Expenses** and **Damages** exceeding the Proposed Settlement Amount. It is a condition of this insurance that the remaining seventy five percent (75%) percent of such **Claim Expenses** and **Damages** shall be borne by the **Insured** at its own risk. Such amounts are subject to the provisions of section II. Limits of Liability and Deductible. In the event that the **Named Insured** refuses to consent to any settlement recommended by the **Company,** which is acceptable to the claimant, the **Company's** right and duty to defend such **Claim** shall end upon the date of such refusal.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
All other provisions of the Policy remain unchanged.

| Insured: | Policy Number: |
|---|---|
| Mills, Potoczak & Company | MPL 1468418-P1 |
| Effective Date of This Endorsement: | Authorized Representative: |
| 01/21/2016 | |

MPL 103001-70-0915

# NAUTILUS INSURANCE COMPANY

## Amend Damages to Include Punitive Damages

In consideration of the premium paid for this **Policy**, Section III. Definitions **F. Damages** is deleted in its entirety and replaced with the following:

F.  **Damages** means judgments, awards and settlements (including pre-judgment interest), provided all settlements are negotiated with the assistance and approval of the **Company**. **Damages** also includes punitive and exemplary damages, and the multiple portions thereof, to the extent that such damages are insurable under the law of the most favorable applicable jurisdiction. **Damages** do not include:

1. fees, costs and expenses paid or incurred or charged by any **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

2. civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule;

3. injunctive or declaratory relief;

4. any amount for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order;

5. costs to comply with any injunctive relief.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
All other provisions of the Policy remain unchanged.

| Insured: | Policy Number: |
|---|---|
| Mills, Potoczak & Company | MPL 1468418-P1 |
| Effective Date of This Endorsement: | Authorized Representative: |
| 01/21/2016 | |

MPL 306101-70-0915

# NAUTILUS INSURANCE COMPANY

## Addition of Independent Contractors as Insureds

In consideration of the premium paid for this **Policy**, Section III. Definitions **H. Insured** of this **Policy** is amended by the addition of the following:

**H.**      **Insured** shall include any independent contractor, as an individual or entity, with whom the **Named Insured** or any **Subsidiary** has agreed in a written contract or agreement that such independent contractor be added as such to this **Policy** solely for acts or omissions within the course and scope of their contracted duties performed for the **Named Insured** or any **Subsidiary,** and on behalf of and for clients of the **Named Insured** or any **Subsidiary**.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
All other provisions of the Policy remain unchanged.

| Insured: | Policy Number: |
|---|---|
| Mills, Potoczak & Company | MPL 1468418-P1 |
| Effective Date of This Endorsement: | Authorized Representative: |
| 01/21/2016 | |

MPL 308901-00-0915

# NAUTILUS INSURANCE COMPANY

## Exclusion IV. A. Amended
## Claim Expenses Covered

In consideration of the premium paid for this **Policy**, Section IV. Exclusion A. of this **Policy** is deleted in its entirety and replaced with the following:

A.     based on, or arising out of, or in any way involving any actual or alleged dishonest, fraudulent, criminal, or malicious act, error, omission, or intentional wrongdoing by or at the direction of an **Insured**. Criminal proceedings are not covered under this **Policy** regardless of the allegations made against any **Insured**. The **Wrongful Act** of any individual **Insured** person shall not be imputed to any other individual **Insured** person to determine if coverage is available.

However, if a **Claim** made against the **Insureds** contains both matters covered by this **Policy** and matters excluded by IV. A. above, the **Company** shall pay **Claim Expenses** for such **Claim** unless or until the dishonest, fraudulent or malicious act, omission or intentional wrongdoing has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of the **Company's** rights under this **Policy**.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
All other provisions of the Policy remain unchanged.

| Insured: | Policy Number: |
|---|---|
| Mills, Potoczak & Company | MPL 1468418-P1 |
| Effective Date of This Endorsement: | Authorized Representative: |
| 01/21/2016 | |

MPL 401102-70-0915

# NAUTILUS INSURANCE COMPANY

## Specific Claim or Incident Exclusion

In consideration of the premium paid for this **Policy**, Section IV. Exclusions of this **Policy** is amended by the addition of the following:

**IV.**   This **Policy** does not apply to any **Claim Expenses** or **Damages** in connection with any **Claim** based on, arising from, or in any way involving any of the following matters:

| Description of Excluded Claims and or Incident |
| --- |
| 1. Kevin Rhyme vs. Pacific West Capital Group, Case Number: BC606213 filed with the Los Angeles Superior Court |

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
All other provisions of the Policy remain unchanged.

| Insured: | Policy Number: |
| --- | --- |
| Mills, Potoczak & Company | MPL 1468418-P1 |
| Effective Date of This Endorsement: | Authorized Representative: |
| 01/21/2016 | |

MPL 400906-00-0915

# NAUTILUS INSURANCE COMPANY

## Policy Amendatory Endorsement

In consideration of the premium paid for this **Policy**:

1.      Section IV. of this **Policy** is amended by the the addition of the following:

      U.     based upon, or arising out of, or in any way involving the rendering or failure to render professional services as an actuary, attorney, certified public accountant, financial planner, or investment advisor.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form.
All other provisions of the Policy remain unchanged.

| Insured: | Policy Number: |
|---|---|
| Mills, Potoczak & Company | MPL 1468418-P1 |
| Effective Date of This Endorsement: | Authorized Representative: |
| 01/21/2016 | |

MPL 000999-00-0915



## MONITOR LIABILITY MANAGERS

## CLAIM REPORTING PROCEDURES

In the event of an incident which may result in a claim, an actual claim or your receipt of suit papers, please follow the procedures outlined below:

NOTICE OF EACH INCIDENT, CLAIM OR SUIT SHOULD IMMEDIATELY BE REPORTED TO:

MONITOR LIABILITY MANAGERS
CLAIMS DEPARTMENT
233 S. WACKER DRIVE, SUITE 3900
CHICAGO, IL 60606
Fax: (312) 207-1839
E-mail: newclaim@monitorliability.com
Online: www.monitorliability.com/claims/report-claim

TO ENABLE US TO RESPOND MORE QUICKLY AND EFFICIENTLY, please fax or email any pertinent details of the claim directly to our attention.

PLEASE BE SURE TO INCLUDE:

- Your Name, Address and Phone Number;
- Your Policy Number and the Policy Period;
- A written narrative of the circumstances surrounding the claim or potential claim;
- Names and addresses of the claimant;
- Details of the any underlying claim, including current status and the amount in controversy or relief demanded.
- If you are submitting the report by mail or fax, please also include any letters of demand or any legal papers which you have received regarding the claim.

Please provide your professional liability insurance agent a copy of all claim notices and correspondence sent to Monitor Liability Managers.

# EXHIBIT B



# *Professional Liability Insurance*

### CLAIM OFFICE:

**Mail claims to:**
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA  30326-1160

**Fax claims to:**
(404) 231-3755
(Attn: Claims Department)

**Email claims to:**
reportclaims@rsui.com

RSG 51029 1114



**PROFESSIONAL LIABILITY POLICY DECLARATIONS**
**(Claims-Made and Reported Form)**

## Landmark American Insurance Company
(An Oklahoma Stock Co.)
(hereinafter called "the Company")

EXECUTIVE OFFICES:   945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160

**Policy Number:**   LHR749196     **RENEWAL OF:**   LHR743071 00

**Producer Name:**

**Named Insured and Mailing Address:**

MILLS, POTOCZAK & COMPANY
27600 CHAGRIN BLVD., SUITE 200
CLEVELAND, OH 44122

**Policy Period:   From:** 1/21/2015   **To:** 1/21/2016     at 12:01 A.M. Standard Time at the Named Insured address as stated herein.

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED AS FOLLOWS:

| | | |
|---|---|---|
| 1. | **NAMED INSURED'S PROFESSIONAL SERVICES:** | ESCROW, POLICY CERTIFICATION, PREMIUM PAYMENT, LIFE TRACKING, DEATH CLAIMS AND TRUST SERVICES PERFORMED IN CONNECTION WITH LIFE SETTLEMENTS |
| 2. | **LIMITS OF LIABILITY:** | $ 5,000,000   **Each Claim** |
| | | $ 5,000,000   **Aggregate Limit** |
| 3. | **DEDUCTIBLE:** | $ 50,000   **Each Claim** |
| 4. | **RETROACTIVE DATE:** | 01/21/1990 |
| 5. | **PREMIUM:** | $ 66,840.00   **Not Subject to Audit** |

THE INSURANCE HEREBY EVIDENCED IS WRITTEN BY AN APPROVED NON-LICENSED INSURER IN THE STATE OF OHIO AND IS NOT COVERED IN CASE OF INSOLVENCY BY THE OHIO INSURANCE GUARANTY ASSOCIATION.

6.   **FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**

See attached forms list.

THESE DECLARATIONS TOGETHER WITH A SIGNED COPY OF THE NAME INSURED'S APPLICATION FOR THIS POLICY, COVERAGE FORM(S), FORMS AND ENDORSEMENTS, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

NOTICE:  THIS IS A CLAIMS-MADE AND REPORTED POLICY.  PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE AFFORDED BY THE POLICY WITH YOUR INSURANCE AGENT OR BROKER.

By: _____

**January 22, 2015**
Date

Authorized Representative

SubldID#:   294521     BinderID#
Created By:   CD

RSG 50004 0714

**LANDMARK AMERICAN INSURANCE COMPANY**

## SCHEDULE OF POLICY ATTACHMENTS AND FORMS

| Form Number | Form Title |
| --- | --- |
| RSG 51025 0814 | Miscellaneous Professional Liability Coverage Form Claims Made and Reported Basis |
| ENDT-01 | Additional Exclusions Endorsement |
| ENDT-02 | Minimum Retained Premium - RSG 54025 0405 |
| ENDT-03 | Nuclear Energy Liability Exclusion - RSG 56058 0903 |
| ENDT-04 | Ohio Surplus Lines Disclosure Notice - RSG 99117 0909 |
| ENDT-05 | Prior and Pending Litigation Exclusion - RSG 56069 0104 |
| ENDT-06 | Service Of Suit - RSG 94022 0407 |
| ENDT-07 | State Fraud Statement - RSG 99022 0313 |
| ENDT-08 | TCPA Exclusion - RSG 56121 1211 |

**Policy No.:** LHR749196

RSG 54081 0710

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Form Provides Claims-Made Coverage.*
*Please Read The Entire Form Completely.*

# MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM – CLAIMS MADE AND REPORTED BASIS

Throughout this document, the word "Insured" means any person or entity qualified as such under **Part I. E. Covered Persons and Entities**. The word "Company" refers to the Company providing the insurance shown on the Declarations.

Other words and phrases that appear in bold have special meaning. Refer to **Part III. Definitions.**

## Part I.  Insuring Agreement

### A.  Covered Services

The Company will pay on behalf of the Insured, as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as **Damages** and associated **Claim Expenses** arising out of a negligent act, error or omission, **Advertising Liability** or **Personal Injury**, even if the **Claim** asserted is groundless, false or fraudulent, in the rendering of or failure to render professional services as described in the Declarations, provided that the:

1.  **Claim** is first made against the Insured during the **Policy Period**, and reported to the Company no later than thirty (30) days after the end of the **Policy Period**;

2.  Negligent act, error or omission, **Advertising Liability** or **Personal Injury** took place in a covered territory;

3.  Negligent act, error or omission, **Advertising Liability** or **Personal Injury** took place after the **Retroactive Date** as shown in the Declarations.

### B.  Defense and Settlement

The Company will have the right and duty to defend any **Claim** against an Insured seeking **Damages** to which this policy applies, even if any of the allegations of the **Claim** are groundless, false or fraudulent. The Company's right and duty to defend any **Claim** shall end when the Company's Limit of Liability has been exhausted by payment of **Damages** and/or **Claim Expenses**, or has been tendered to the Insured or to a court of competent jurisdiction.

The Company shall not settle any **Claim** without the Insured's written consent. If, however, the Insured refuses to consent to any settlement recommended by the Company and elects to contest the **Claim**, or continue any legal proceedings in connection with such **Claim**, then the Company's maximum liability shall be limited to the amount for which the **Claim** could have settled, including the total amount of **Claims Expenses** incurred up to the date of the Insured's refusal. Such amounts are subject to the provisions of section **C. Policy Limits**.

The Insured shall not admit any liability for or settle any **Claim** or incur any costs, charges or expenses without the written consent of the Company.

### C.  Policy Limits

Regardless of the number of persons or entities insured or included in **Part I. E. Covered Persons and Entities**, or the number of claimants or **Claims** made against the Insured:

1.  The maximum liability of the Company for **Damages** and **Claim Expenses** resulting from each **Claim** first made against the Insured during the **Policy Period** and the Extended Reporting Period, if purchased, shall not exceed the amount shown in the Declarations as each **Claim**;

2. The maximum liability of the Company for all **Damages** and **Claim Expenses** as a result of all **Claims** first made against the Insured during the **Policy Period** and the Extended Reporting Period, if purchased, shall not exceed the amount shown in the Declarations as Aggregate.

The Company shall not be obligated to pay any **Claim** for **Damages** or defend any **Claim** after the applicable Limit of Liability has been exhausted by payment of judgments, settlements, **Claim Expenses** or any combination thereof. **Claim Expenses** are part of and not in addition to the applicable Limits of Liability. Payment of **Claim Expenses** by the Company reduces the applicable Limits of Liability.

The inclusion of more than one Insured, or the making of **Claims** by more than one person or organization, does not increase the Company's Limit of Liability. All **Claims** arising out of a single negligent act, error or omission, or a series of related negligent acts, errors or omissions by one or more Insureds shall be treated as a single **Claim** for all purposes of this policy. All **Claims** shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period** and all such **Claims** shall be subject to the same Each Claim Limit of Liability during that **Policy Period**.

**D. Deductible Provisions**

The deductible amount shown in the Declarations shall be paid by the Insured, applies to each **Claim** and includes **Damages** or **Claim Expenses**, whether or not a loss payment is made. If the deductible amount is initially paid by the Company, the Named Insured shall reimburse the amount paid within thirty (30) days, upon written request of the Company.

**E. Covered Persons and Entities**

1. Named Insured as shown in the Declarations, and if the Named Insured is an individual, his or her spouse, or domestic partner, but only with respect to the professional services rendered by or on behalf of the Named Insured;

2. Any present or former principal, partner, officer, director, or employee of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured;

3. Heirs, Executors, Administrators, and in the event of an Insured's death, incapacity or bankruptcy, legal representatives of any Insured, but only with respect to professional services rendered prior to such Insured's death, incapacity or bankruptcy.

**F. Covered Territory**

This policy applies to covered **Claims** arising out of negligent act(s), error(s) or omission(s), **Advertising Liability** or **Personal Injury** committed by the Insured anywhere in the world, provided that either the **Claim** or suit is first filed and maintained continuously in the United States of America, its territories or possessions, Puerto Rico or Canada.

**G. Extended Reporting Period**

If the policy is not renewed for any reason, or is cancelled for any reason other than for nonpayment of premium or deductible (whether cancelled by the Company or by the Named Insured), the Named Insured as shown in the Declarations, has the right to purchase, within thirty (30) days of policy termination, an extension of the coverage granted by this policy. This reporting period extension shall remain in force for a period of either twelve (12), twenty-four (24) or thirty-six (36) months after the policy terminates, but only for **Claims** resulting from negligent acts, errors or omissions, **Advertising Liability** or **Personal Injury** committed before the effective date of the cancellation or nonrenewal, and otherwise covered by this policy. Increased premiums or deductibles or modifications of coverage terms or conditions upon renewal do not constitute cancellation or nonrenewal.

The premium for this Extended Reporting Period will not exceed one hundred percent (100%) for twelve months, one hundred fifty percent (150%) for twenty-four months or one hundred seventy-five percent (175%) for thirty-six months of the full annual premium set forth in the Declarations and any attached endorsements, and must be elected and paid within thirty (30) days after the effective date of the policy's termination. Such additional premium is deemed fully earned immediately upon the inception of the Extended Reporting Period.

RSG 51025 0814

The Extended Reporting Period is added by endorsement and, once endorsed, cannot be cancelled. The Extended Reporting Period does not reinstate or increase the Limits of Liability. The Company's Limits of Liability during the Extended Reporting Period are part of, and not in addition to, the Company's Limits of Liability stated in the Declarations.

**Part II.  Exclusions**

This policy does not apply to any **Claim** or **Claim Expenses** based upon or arising out of:

A.  Dishonest, fraudulent, criminal or intentional acts, errors or omissions committed by or at the direction of any Insured.

B.  **Bodily Injury** or **Property Damage.**

C.  Infringement of copyright, patent, trademark, trade name, trade dress, service mark, title or slogan.

D.  Any business enterprise not named in the Declarations which is owned, controlled, operated or managed by any Insured.

E.  A **Claim** by one Insured under this policy against another Insured under this policy.

F.  Any violation of the Federal Securities Act of 1933 or Securities Exchange Act of 1934 or any other Federal or State securities law or any amendments thereof or additions thereto, or rules or regulations promulgated thereunder.

G.  Any obligation or liability assumed by the Insured under any contract or any oral or written agreement, unless liability would have attached in the absence of such a contract or agreement.

H.  Violation of any provisions of the Employee Retirement Income Security Act of 1974, or any amendment, regulation, ruling or order issued pursuant to that Act.

I.  Breach of express or implied warranty or guarantee.

J.  Or involving the ownership, maintenance, use (including operation, loading and unloading), or entrustment to others of any aircraft, automobile, motor vehicle, mobile vehicles or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation, loading and unloading.

K.  An alleged act, error or omission, **Personal Injury** or circumstance likely to give rise to a **Claim** that an Insured had knowledge of prior to the effective date of this policy.  This exclusion includes, but is not limited to, any prior **Claim** or possible **Claim** referenced in the Insured's application.

L.  False advertising or misrepresentation in advertising, but only regarding intentionally false, misleading, deceptive, fraudulent or misrepresenting statements in advertising the Insured's own product or service.

M.  Unfair competition.

N.  Liability of any person or entity, or any Company of such person or entity, under any worker's compensation, unemployment compensation, employer's liability, disability, or other similar law.

O.  Regulatory authority or administrative actions brought by a federal, state or local governmental entity including, but not limited to: any actions, decisions, orders or proceedings by the Federal Trade Commission, Federal Communications Commission or any other federal, state or local governmental agency.

P.  The insolvency or bankruptcy of an Insured or of any other person, firm or organization.

Q.  1.  Refusal to employ;

 2.  Termination of employment;

 3.  Coercion, demotion, performance evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, retaliation or other employment related practices, procedures, policies, acts or omissions;

 4.  Consequential **Bodily Injury** or **Personal Injury** as a result of Q. (1) through (3) above.

This exclusion applies whether the Insured may be held liable as an employer or in any other capacity and to any obligation to share **Damages** with or to repay someone else who must pay **Damages** because of the injury.

It is further agreed that no coverage shall apply under this policy to any **Claim** brought by or against any spouse, child, parent, brother or sister of the Insured or any other person. The Company shall not have a duty to defend any **Claim**, suit, arbitration or any other form of trial court proceeding.

R. 1. The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of **Pollutants** or asbestos;

2. The failure to discover or disclose the existence or amount of **Pollutants** or asbestos;

3. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with **R. (1.)** or **(2.)** above;

4. Any request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or, in any way respond to or assess the effects of **Pollutants** or asbestos;

5. Any **Claim** or suit by or on behalf of a governmental authority for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or, in any way, responding to, or assessing the effect of **Pollutants** or asbestos.

## Part III. Definitions

A. **Advertising Liability** means injury arising out of one or more of the following offenses:

1. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2. Oral or written publication of material that violates a person's right of privacy;

3. Misappropriation of advertising ideas or style of doing business.

B. **Bodily Injury** means physical or mental harm, sickness or disease sustained by a person, including death resulting from any of these at any time.

C. **Claim** means a written demand for monetary or non-monetary relief received by the Insured during the **Policy Period**, including the service of suit, or the institution of an arbitration proceeding. Additionally, **Claims** that arise from an incident, occurrence or offense first reported by the Insured during the **Policy Period** and accepted by the Company in accordance with **Part IV. A. Notice of Claim** will be considered a **Claim** first made during the **Policy Period**.

D. **Claim Expense** means expenses incurred by the Company or the Insured with the Company's consent in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered **Claims**, whether paid by the Company or the Insured with the Company's consent, and include:

1. Attorney fees;

2. Costs taxed against the Insured in any **Claim** defended by the Company;

3. Interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Liability;

4. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the available applicable policy limit, and only if said **Claims** are covered by the policy;

5. Reasonable expenses incurred by the Insured at the Company's request other than:

   a. Loss of earnings;

   b. Salaries or other compensation paid to the Insured or any employee of the Insured.

E. **Damages** means monetary judgment, award or settlement, except those for which insurance is prohibited by law. **Damages** does not include punitive or exemplary damages, fines, penalties, sanctions, taxes, awards, or amounts that are multiples of any covered **Damages**, disputes over fees, deposits, commissions or charges for goods or services.

F. **Policy Period** means the period of time stated in the Declarations or any shorter period resulting from policy cancellation or amendment to the policy.

G. **Personal Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

   1. False arrest, detention or imprisonment;

   2. Malicious prosecution;

   3. Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   5. Oral or written publication, in any manner, of material that violates a person's right of privacy.

H. **Property Damage** means injury to tangible property, including all resulting loss of use of that property, or loss of use of tangible property that is not physically injured.

I. **Retroactive Date** means the date stated in the Declarations on or after which any alleged or actual negligent act, error or omission, **Advertising Liability** or **Personal Injury** must have first taken place in order to be considered for coverage under this policy.

J. **Pollutants** means any solid, liquid, gaseous or thermal irritant, contaminant or toxin, whether live or inanimate; including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals, silica, lead, lead compounds or materials containing lead, asbestos, asbestos compounds or materials containing asbestos, radon, waste or any like substances. Waste includes materials to be recycled, reconditioned or reclaimed.

## Part IV. Conditions

A. **Notice of Claim**

The Insured must notify the Company as soon as practicable of an incident, occurrence or offense that may reasonably be expected to result in a **Claim**. Where notice to the Company of such incidents, occurrences or offenses has been acknowledged as adequate by the Company in writing, subsequent **Claims** derived from such incidents, occurrences or offenses will be deemed as first made at the time the incident, occurrence or offense giving rise to such **Claim** was first provided. The Insured also must immediately send copies to the Company of any demands, notices, summonses or legal papers received in connection with any **Claim**, and must authorize the Company to obtain records and other information. Please send all claim information to:

   Attention: **Claims** Dept.
   RSUI Group, Inc.
   945 East Paces Ferry Road, Suite 1800
   Atlanta, Georgia 30326-1160
   Or Via Email:
   reportclaims@rsui.com

B. **Prohibition of Voluntary Payments and Settlements**

With respect to any **Claim** covered under this policy, the Insured will not make payment, admit liability, settle **Claims**, assume any obligation, agree to arbitration or any other means of resolution of any dispute, waive any rights or incur **Claim Expenses** without prior written Company approval, except at the Insured's own cost.

C. **Cooperation**

The Insured will cooperate with the Company in the conduct of a **Claim** and, upon the Company's request, submit to examination and interrogation by the Company representative, under oath if required, and will attend hearings and trials and assist in affecting settlements, securing and giving evidence, and obtaining the attendance of witnesses.

**D. Notice of Cancellation and Nonrenewal**

The Named Insured may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

For other than nonpayment of premium or deductible, the Company will give the Named Insured sixty (60) days written notice prior to cancellation or nonrenewal of this policy by mailing or delivering the notice to the first Named Insured's last known mailing address. If the Company cancels the policy due to the Named Insured's failure to pay a premium when due, this policy may be cancelled by the Company giving not less than 10 days written notice of cancellation.

The cancellation notice will state the effective date of the cancellation and the policy will terminate on that date. If cancelled by the Company, the earned premium will be computed pro-rata. If cancelled by the Insured, the earned premium will be computed short rate.

**E. Premium and Audit**

Premium for this coverage is computed in accordance with the Company's rules and rates. Any premium shown as advance premium may be a deposit premium only. If the premium is a deposit premium, at the close of each audit period, the Company will compute the earned premium for that period. Audit premiums are due and payable upon notice.

The Company may examine and audit the Insured's books and records at any time during the **Policy Period** and within three years after the final termination of this policy, as far as they relate to the subject matter of this policy.

The first Named Insured, as shown in the Declarations, must keep records of information the Company will need for premium computation and, upon request, must send the Company copies of the information.

**F. Authorization**

The first Named Insured listed in the Declarations agrees to act as the Named Insured with respect to giving and receiving of all notices, exercising the Extended Reporting Period option, canceling the policy, paying all premiums and deductibles and receiving any return premiums that may become due.

**G. Change**

This policy contains all of the agreements concerning the insurance provided. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with the Company's consent. The policy terms can be amended or waived only by endorsement issued by the Company, and made a part of this policy.

**H. Subrogation**

In the event of any **Claim** under this policy, the Company will be subrogated to all the Insureds' rights of recovery against any person or organization, and the Insured will execute and deliver instruments and papers, and do whatever else is necessary to secure such rights. The Insured will do nothing after the loss to prejudice such rights.

**I. Other Insurance**

This policy will be excess over, and will not contribute with, any other existing insurance, unless such other insurance is specifically written to be excess of this policy.

If it is determined that both this insurance and other insurance or self insurance apply to any **Claim** on the same basis, whether primary, excess or contingent, the Company will not be liable under this policy for a greater proportion of the **Damages** or **Claim Expenses** than the applicable Limit of Liability under the policy for such **Damages** bears to the total applicable Limit of Liability of all other insurance or self insurance, whether or not collectible against such **Claims**.

**J. Actions Against the Insurer**

No action will be taken against the Company unless, as a condition precedent, the Insured is in full compliance with all of the terms of this policy and until the amount of the Insured's obligations to pay shall have been finally determined, either by judgment against the Insured after actual trial, or by written agreement of the Insured, the claimant and the Company.

**K. Non-Transferability**

The Insured's rights and duties under this policy may not be transferred without the written consent of the Company.

**L. Coverage in Bankruptcy**

Bankruptcy or insolvency of the Insured or of the Insured's estate does not relieve the Company of its obligations under this policy.

**M. False or Fraudulent Claims**

If an Insured knowingly makes any **Claim** that is false or fraudulent, this insurance shall become void and entitlement to coverage for all **Claims** shall be forfeited.

**N. Application**

The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured and the Company, or any of its agents, relating to this insurance. The signed application, and any attachments thereto, submitted in connection with this Policy are incorporated herein and constitute a part of this Policy.

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully*
## ADDITIONAL EXCLUSIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

In consideration of the premium charged, it is agreed that **Part II. Exclusions** is amended to include the following:

S.   Design, fabrication or supervision of the manufacture or construction of any product, structure or device.

T.   Commingling, conversion, misappropriation or defalcation of funds or other property.

U.   Any governmental tax (including but not limited to income, excise, property, value added or sales tax) or tariff, license or other governmental fee or any assessment, fine, penalty or exemption relating thereto.

V.   Any gain, profit or advantage to which the insured is not legally entitled.

W.   Rendering or failure to render professional services as an actuary, architect, attorney, certified public accountant, construction contractor, construction manager, engineer, financial planner, insurance agent, insurance broker, investment advisor, physician, surgeon, dentist or any other allied health care provider.

X.   Acquisition or merger advice or consultation.

All other terms and conditions of this policy remain unchanged.

This endorsement effective    1/21/2015
Forms part of Policy Number    LHR749196
Issued to    MILLS, POTOCZAK & COMPANY
by    Landmark American Insurance Company                    Endorsement No.:      01

MANUSCRIPT

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

## MINIMUM RETAINED PREMIUM

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

In the event of cancellation of this policy by the Insured, return premium shall be computed at .90 of the pro rata unearned policy premium, subject however to a retention by the company of not less than $16,710.

Nothing in this endorsement is deemed to affect the Company's cancellation rights which remain as indicated in the coverage form.

It is further agreed that return premium may be allowed on a pro rata basis if cancelled for non payment of premium or deductible, subject however to retention by the company of the minimum retained premium as shown above.

All other terms and conditions of this policy remain unchanged.

This endorsement effective    1/21/2015
Forms part of Policy Number   LHR749196
Issued to    MILLS, POTOCZAK & COMPANY
by    Landmark American Insurance Company        Endorsement No.:    02

RSG 54025 0405

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

# NUCLEAR ENERGY LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

**This policy does not apply;**

a. **Under any Liability Coverage,** to bodily injury or property damage;

   (1) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Associates of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

b. **Under any Medical Payments Coverage** or any Supplemental Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

c. **Under any Liability Coverage** to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:

   (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

   (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat;

d. **As used in this Endorsement:**

   (1) "Hazardous properties" include radioactive, toxic, or explosive properties;

   (2) "Nuclear material" means source material, special nuclear material or byproduct material;

   (3) "Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   (4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

This endorsement effective   1/21/2015
Forms part of Policy Number   LHR749196
Issued to   MILLS, POTOCZAK & COMPANY
by   Landmark American Insurance Company

Endorsement No.:   03

RSG 56058 0903

(5) "Waste" means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (6), (a) or (b) thereof;

(6) "Nuclear facility" means:

(a) any nuclear reactor;

(b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing, or packaging waste;

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

All other terms and conditions of this policy remain unchanged.

LANDMARK AMERICAN INSURANCE COMPANY

## *IMPORTANT NOTICE*

### OHIO SURPLUS LINES DISCLOSURE NOTICE

**THE INSURANCE HEREBY EVIDENCED IS WRITTEN BY AN APPROVED NON-LICENSED INSURER IN THE STATE OF OHIO AND IS NOT COVERED IN CASE OF INSOLVENCY BY THE OHIO INSURANCE GUARANTY ASSOCIATION.**

RSG 99117 0909

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# PRIOR AND PENDING LITIGATION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

In consideration of the premium charged, it is agreed that this policy does not apply to any **Claim(s)** arising from:

1. any **Claim** or litigation against any **Insured** occurring prior to, or pending as of 12/21/2008 including (but not limited to) **Claims**, demands, causes of actions, legal or quasi-legal proceedings, decrees, or judgments;

2. any subsequent litigation or **Claims** arising from, or based on substantially the same matters as alleged in the pleadings of such prior or pending litigation;

3. any act, error, omission, **Personal Injury** or **Advertising Liability** of any insured(s) which gave rise to such prior or pending litigation or **Claims**.

All other terms and conditions of this policy remain unchanged.

This endorsement effective    1/21/2015
Forms part of Policy Number    LHR749196
Issued to    MILLS, POTOCZAK & COMPANY
by    Landmark American Insurance Company

Endorsement No.:    05

RSG 56069 0104

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SERVICE OF SUIT

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS

In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America.  Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court or seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States, moreover, this endorsement is not an agreement that the law of a particular jurisdiction applies to any dispute under the policy.

Service of process in such suit may be made upon the Senior Claims Officer of RSUI Group, Inc. 945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160, or his designee. In any suit instituted against any one of them upon this contract, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of  this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of the policy remain unchanged

This endorsement effective   1/21/2015
Forms part of Policy Number   LHR749196
Issued to   MILLS, POTOCZAK & COMPANY
by   Landmark American Insurance Company

Endorsement No.:   06

RSG 94022 0407

## State Fraud Statements
## Fraud Statements – Signature Required for New York Only

### ARKANSAS, LOUISIANA, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### ALASKA FRAUD STATEMENT

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

### ALABAMA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form.  Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

### CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

### COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

### DISTRICT OF COLUMBIA FRAUD STATEMENT

**WARNING:** It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person.  Penalties include imprisonment and/or fines.  In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

### FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

### HAWAII FRAUD STATEMENT

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

A member of Alleghany Insurance Holdings LLC

### IDAHO FRAUD STATEMENT

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

### KANSAS FRAUD STATEMENT

Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

### KENTUCKY FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

### MAINE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

### MARYLAND FRAUD STATEMENT

Any person who knowingly or wilfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or wilfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### NEW JERSEY FRAUD STATEMENT

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

### NEW MEXICO FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

### OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

A member of Alleghany Insurance Holdings LLC

## OKLAHOMA FRAUD STATEMENT

**WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## OREGON FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

## PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

## TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

## SIGNATURE REQUIRED

## NEW YORK FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

_____

Insured/Applicant/Claimant

_____

By (Authorized Representative)

_____

Title

_____

Date

RSG 99022 0313

A member of Alleghany Insurance Holdings LLC

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

# TCPA EXCLUSION

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

This insurance does not apply to any **Claim** based upon or arising directly, or indirectly, out of any actual or alleged violation of the following:

1. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2. The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), including any amendment of or addition to such law;

3. The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA);

4. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information; or

5. Any other law, ordinance, regulation or statute relating to any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

In addition, this insurance does not apply to **Claims** asserted under the common law which are alleged to arise out of the distribution, publication, sending or transmission of material or information via telephone, telephone facsimile machine, computer or other electronic devices.

All other terms and conditions of this policy remain unchanged.

This endorsement effective    1/21/2015
Forms part of Policy Number   LHR749196
Issued to    MILLS, POTOCZAK & COMPANY
by    Landmark American Insurance Company

Endorsement No.:    08

RSG 56121 1211